*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 04a0390p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

ROBERT BECK, et al.,

*Plaintiffs-Appellants,*

*v.*

No. 02-3669

CITY OF CLEVELAND, OHIO,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 99-01271—Jack B. Streepy, Magistrate Judge.

Argued: October 23, 2003

Decided and Filed: November 12, 2004

Before: DAUGHTREY and GILMAN, Circuit Judges; HAYNES, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Michael Leibig, ZWERDLING, PAUL, LEIBIG, KAHN & WOLLY, Alexandria, Virginia, for Appellants. William F. Schmitz, JOHNSON & ANGELO, Cleveland, Ohio, for Appellee. **ON BRIEF:** Michael Leibig, ZWERDLING, PAUL, LEIBIG, KAHN & WOLLY, Alexandria, Virginia, Patrick A. D'Angelo, Cleveland, Ohio, for Appellants. William F. Schmitz, JOHNSON & ANGELO, Cleveland, Ohio, for Appellee.

_____

## OPINION

_____

HAYNES, District Judge. Plaintiffs, Robert Beck, President of the Cleveland Police Patrolmen's Association, and past and present Cleveland Police Officers (the "Police Officers"), appeal the district court's final judgment dismissing their claims for violations of Section 207(o)(5) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §207(o)(5)**,** by the defendant, City of Cleveland ("the City"). The district court granted the City's motion for summary judgment on the Police Officers' FLSA claims. The Police Officers' appeal is limited to their claims about the City's compensatory leave policy arising out of the denials of their requests for their accrued compensatory leave. The Police Officers contend that the district court erred by refusing to give controlling weight to opinions of the Secretary of the Department of Labor (DOL) that under the undue disruption rule in Section 207(o)(5), a municipality cannot refuse to

_____

[*]The Honorable William J. Haynes, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation.

honor a police officer's timely leave request solely to avoid payment of overtime to substitute police officers. The City contends that its compensatory leave system does not violate Section 207(o)(5) because Congress amended the FLSA to reduce the financial burdens of the FLSA upon governmental entities; that under Section 207(o)(5), the City can deny compensatory leave where the payment of overtime to substitute police officers would impose a financial burden upon the City**;** and that granting the officers' leave requests would result in undue disruption of the City's police services within the meaning Section 207(o)(5).

For the reasons set forth below, we **REVERSE** the district court's judgment granting the City's motion for summary judgment on the Police Officers' compensatory leave claim and **REMAND** this action for additional factual findings on this claim. First, we conclude that the statutory phrase "unduly disrupt" in Section 207(o)(5) is ambiguous. Thus, we conclude that judicial deference is due to the Secretary's opinions that the payment of overtime to honor an officer's request for compensatory time does not qualify as unduly disruptive under Section 207(o)(5)**.** Hence, the City cannot deny a timely compensatory leave request solely for financial reasons. In addition, from a review of this record, we conclude that the City has not proved that granting the Police Officers' otherwise timely requests for compensatory leave would result in an unreasonable financial burden and thereby cause an undue disruption of its operations. Absent a clear showing by the City of undue disruption of its police services, due to severe financial constraints to pay overtime to substitute officers, the City's denials of Police Officers' timely requests for accrued compensation leave must be held to violate Section 207(o)(5).

## A. *Procedural History*

On May 27, 1999, several current and former Cleveland Police Officers[1] filed their complaint in the district court alleging that the City failed to comply with the FLSA. The Police Officers' specific claims were that the City miscalculated their regular rates of pay under the FLSA, violated FLSA rules in denying compensatory leave, failed to pay for time spent transporting City vehicles, and placed illegal restrictions on their use of sick leave. The Police Officers also asserted that the City's violations were intentional, entitling them to liquidated damages. The City denied the Police Officers' allegations about its pay and leave practices.

With the parties' agreement, the district court bifurcated the action: first, to resolve the liability issue of whether the City's wage and hour practices in its police department violated the FLSA, and the second, if necessary, to determine the proper measure of damages for any violations. The parties also agreed to a discovery plan under which each police officer would respond to a questionnaire and after its review of the responses, the City would choose ten officers to depose as well as Robert Beck, the Police Officers' Union's president. The parties also agreed that those officers' depositions would be binding on all Police Officers in the action. Under the agreed discovery plan, the Police Officers deposed two City department supervisors who were responsible for time keeping and payroll.

Upon completion of discovery, both parties submitted cross-motions for summary judgment. The district judge referred the motions to a magistrate judge who filed a report and recommendation. Relying principally upon *Aiken v. Memphis*, 190 F.3d 753 (6th Cir. 1999),[2] the magistrate judge recommended that the district judge grant the City's motion for summary judgment, which included the Police Officers' FLSA claims about the City's compensatory leave practices. The Police Officers objected to the magistrate judge's report and recommendation**,** contending that the Secretary's opinions on Section 207(o)(5)

---

[1] The Complaint was originally filed by thirty-five individual plaintiffs. On December 17, 1999, and June 6, 2000, the district court granted the plaintiffs' unopposed motion to add 1,356 police officers who consented to join the action.

[2] As discussed *infra,* in *Aiken*, we deferred to the collective bargaining agreement between the police union and the city that specifically defined "the conditions under which an employee can take compensatory time off." 190 F.3d at 755 (quoting 29 C.F.R. §553.25). *Aiken*, however, addressed only the reasonable request provision in Section 207(o)(5), not its "undue disruption" clause that is at issue here. *See* 190 F.3d at 762-64 (Ryan, J., dissenting).

controlled their compensatory leave claims and that *Aiken* was inapplicable. The City did not respond to the Police Officers' objections.

The district court adopted the magistrate judge's recommendation that defendant's compensatory time system be found to comply with § 207(o)(5), citing *Aiken*. The district court concluded that the "unduly disruptive" language in Section 207(o)(5) is not ambiguous and that the Secretary's opinions on Section 207(o)(5) were neither binding nor persuasive. The district court reasoned, in sum, that requiring the City to pay overtime wages to substitute officers would impose an unreasonable financial burden on the City's ability to provide police services of an acceptable quality and quantity. In the district court's view, such a financial imposition was unduly disruptive and was contrary to the congressional intent underlying the 1985 FLSA amendments establishing compensatory leave, including Section 207(o)(5).

## B. *Factual Background*

The City uses compensatory time as an alternative method of paying overtime to its police officers. On April 1, 1995, the City and the Cleveland Police Patrolmen's Association ("CPPA") entered into **a** Collective Bargaining Agreement ("CBA") allowing overtime to be paid in compensatory time for law enforcement officers whose work exceeds 171 hours within a 28-day period, as permitted by 29 U.S.C. 207(k). The CBA expired on May 31, 1998, but with the parties' agreement, its provisions remain in effect.

Under Article XI, Section 15(m) of the CBA, a Cleveland police officer who is eligible to be compensated for overtime pay can elect on a quarterly basis either compensatory time or cash. For awards of compensatory time, the City awards 90 minutes of compensatory time for each hour of overtime. The City pays cash to those officers who have already accumulated in excess of 480 hours of FLSA compensatory time - the maximum permitted by the FLSA - at time and one-half for all hours worked above that unit. *Id.* Those officers who have not reached the maximum are paid one hour of cash for 30 minutes of overtime. *Id.* Under Article XI, Section 15(c) of the CBA, "[t]he City shall be the sole judge of the necessity for overtime .... There shall be no pyramiding of overtime or other premium pay compensation."

Under Article XI, Sections 15(k) and (j) of the CBA, a police officer may elect to use accrued compensatory time as either "compensatory time off" or as a "family day." According to Article XI, Section (k), leave for compensatory time is subject to two conditions:

> *Compensatory Time Off. Compensatory time off shall be granted [1] in accordance with operational needs and [2] upon reasonable request by the employee requesting such compensatory time off.* Requests for the use of compensatory time will be considered and granted to the employee who first requested the time off, unless an emergency exists.

(emphasis added).

As stated in the CBA, an officer's compensatory leave requests are subject to the City police department's "operational needs." The CBA, however, does not define "operational needs." The commander of human resources for the City's police department describes "operational needs" as "the minimum numbering of zone and special response cars required for a platoon in a district based on the department review of calls for service, per car per district." Robert Beck, the union's president, disputed this characterization of "operational needs," and stated that "there's no stated minimum" of cars, rather "on a daily basis," "it falls under the bailiwick of the [officer in command] to make a decision that day."

To request compensatory leave time, an officer submits an overtime card or places his or her name on the district's calendar that is maintained for that purpose. Once the district's officer-in-charge is satisfied with the number of officers on duty, compensatory leave is awarded on a first come/first served basis. Yet, police supervisors can deny any request for compensatory time off if a special need exists. As a matter of policy, the City does not allow a substitute officer to earn overtime compensation to work in the place of the officer who requests compensatory leave.

As to the operation of the City's compensatory leave practices, the District Court made the following findings of fact on the amount of compensatory time utilized by the City's police officers:

In 1998, 182,651.75 hours of compensatory time, amounting to 22,831 days, were taken by about 1,550 patrol officers of the Cleveland Police Department.

In 1999, this amount increased to 197,412 hours, or about 24,676 days were taken by approximately 1,550 patrol officers.

In 2000, 153,554.75 hours were taken through October 29th, and its estimated that more than 185,000 hours will be used by the end of the year.

The average compensatory leave time per police officer was 13.5 hours annually. The City, however, did not provide statistics on the total compensatory leave its police officers accumulated, but did not use.

The Police Officers' claim is that the City's compensatory leave policy devalues the Police Officers' accrued compensatory time because the City has denied 85% of the Police Officers' requests for this leave. Of the officers deposed, the district court's findings of fact reflect that Officer Kalocizis's requests for compensatory leave time were denied slightly less than one-third of the time. Over the years, Officer Sabo requested compensatory time 40 or 50 times, and the City granted only ten or 15 of his requests. Officer Kijavskas testified that he was denied "lots of days off." Officer Richmond, however, was denied the use of his compensatory time only twice in the last three years. While working as a patrol officer, Officer Vukovic had his compensatory time requests denied 50% to 60% of the time. Officer Van Verth was denied compensatory time ten times, but was granted approximately 100 hours for the first ten months of 2000. Officer Beckwith has had his requests for compensatory time denied seven or eight times a year. *Id.* Officer Sudy testified that when she worked on the first platoon in the Fourth District, "[n]obody got comp time on day shift in the Fourth District for months and months and months at a time. I gave up even requesting it." The City notes that according to its records, Sudy, in fact, consistently requested and received compensatory time leave averaging 124.6 hours per year over a three-year period.

## C. *Standard of Review*

This Court reviews *de novo* a district court's grant of summary judgment. *City Mgmt. Corp. v. U.S. Chem. Co.*, 43 F.3d 244, 250 (6th Cir. 1994). Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is appropriate only "if ... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For such a motion, the Court views the evidence in the light most favorable to the non-moving party. *See Matshushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). For cross-motions for summary judgment, we "must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the non-moving party." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994). The filing of cross-motions for summary judgment does not necessarily mean that an award of summary judgment is appropriate. *B.F. Goodrich Co. v. United States Filter Corp.*, 245 F.3d 587, 593 (6th Cir. 2001).

## D. *Analysis*

The controlling issue here is whether, upon the proof presented, the City's denial of its police officers' timely requests for use of their accrued compensatory leave, to avoid payment of substitute officers at overtime rates, is appropriate under Section 207(o)(5)'s undue disruption rule. The threshold issue, however, involves the legal effect of the Secretary's opinions that a city's denial of a legitimate compensatory leave request to avoid overtime compensation to a substitute officer does not qualify as an undue disruption with the meaning of Section 207(o)(5).

Section 207(o) of the FLSA was enacted in 1985 as part of congressional amendments to address the financial hardships that the FLSA imposed upon states and their political subdivisions. *Christensen v. Harris County*, 529 U.S. 576, 578 (2000).  The principal statutory accommodation was to authorize states and their political subdivisions to award compensatory time or leave "in lieu of overtime compensation." 29 U.S.C. § 207(o)(1) (2003).  Section 207(o)(5) mandates a governmental entity to grant compensatory leave subject to two conditions:

> (5)    An employee of a public agency which is a State, political subdivision of a State, or an interstate governmental agency–
>
> (A)    who has accrued compensatory time off authorized to be provided under paragraph (1),  and
>
> (B)    *who has requested the use of such compensatory time, shall be permitted by the employee's employer to use such time[1] within a reasonable period  after making the request [2]if the use of the compensatory time does not unduly disrupt the operation of the public agency.*

29 U.S.C. § 207(o)(5) (2003) (emphasis added).

In *Christensen*, the Supreme Court considered a county's policy requiring its employees to use their accrued compensatory leave so as to avoid paying its officers compensation for unused leave.  The Supreme Court interpreted Section 207(o)(5) and concluded that: "At  bottom, we think the better reading of § 207(o)(5) is that it imposes a restriction upon an employer's efforts to *prohibit* the use of compensatory time when the employees request to do so; that provision says nothing about restricting an employer's efforts to require employees to use their compensatory time."  529 U.S. at 585 (emphasis in original).

Under the FLSA , the Secretary possesses the authority to issue rules and regulations to implement the Act.  29 U.S.C. §§ 202, 203.  As to section 207(o)(5), the Secretary promulgated  29 C.F.R. § 553.25, which defines the "unduly disrupt" phrase as follows:

> (d) Unduly disrupt. When an employer receives a request for compensatory time off, it shall be honored unless to do so would be "unduly disruptive" to the agency's operations. Mere inconvenience to the employer is an insufficient basis for denial of a request for compensatory time off. (See H. Rep. 99-331, p. 23.) *For an agency to turn down a request from an employee for compensatory time off requires* that it should reasonably and in good faith anticipate *that it would impose an unreasonable burden on the agency's ability to provide services of acceptable quality and quantity for the public* during the time requested without the use of the employee's services.

29 C.F.R. 553.25(d) (emphasis added).

The Secretary's preamble to this regulation states:  "The Department recognizes that situations may arise in which overtime may be required of one employee to permit another employee to use compensatory time. However, such a situation, in and of itself, would not be sufficient for the employer to claim that it is unduly disruptive."   52 Fed. Reg. 2012, 2017 (1987).   In an August 19, 1994, opinion letter, the DOL's Wage and Hour Administrator similarly opined that:

> *It is our position, notwithstanding [a collective bargaining agreement to the contrary],* that an agency may not turn down a request from an employee for compensatory time off unless it would impose an unreasonable burden on the agency's ability to provide service of acceptable quality and quantity for the public during the time requested without the use of the employee's services. *The*

*fact that overtime may be required of one employee to permit another employee to use compensatory time off would not be a sufficient reason for an employer to claim that the compensatory time off request is unduly disruptive.* (Emphasis added).

1994 WL 1004861 (emphasis added).

In a FLSA action involving similar claims as here, *Debraska v. City of Milwaukee*, 131 F. Supp. 2d 1032 (E.D. Wis. 2000), the district court relied on the Secretary's amicus brief, which interpreted the definition of "unduly disrupt" under Section 207(o)(5):

The City claims undue disruption of its operations by granting the use of accrued comp time without having tried various operational alternatives, such as calling replacement officers from other shifts or from other divisions. This could be done without overtime hours being worked. In some cases, however, there may be no alternative to requiring an officer to work overtime hours so that another officer may utilize accrued comp time, *but the Secretary reasonably has determined consistent with legislative intent, that having to work overtime does not, by itself, amount to such a disruption.* Indeed, this is particularly true where the City could pay the replacement officers in comp time and not cash overtime wages. *Congress recognized that only operational disruption, not payroll expense to the employer, could be a basis for denying an employee the use of accrued comp time.*

*Id.* at 1036 (emphasis added).

Where Congress grants "an express delegation of authority to the agency to elucidate a specific provision of the statute to the agency by regulation [,] [the agency's] legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron USA., Inc. v. Nat'l Res. Def. Council, Inc*, 467 US 837, 843-44 (1984). As for "[i]nterpretations such as those in opinion letters ... policy statements, agency manuals, and enforcement guidelines," the Supreme Court subsequently held in *Christensen* that they "do not warrant *Chevron*-style deference." 529 U.S. at 587. But the *Christensen* Court did acknowledge one circumstances in which such agency interpretations would be entitled to deference - "when the language of the regulation is ambiguous." *Id*. at 588. *See also Auer v. Robbins*, 519 U.S. 452, 462 (1997) (holding that the Secretary's interpretation of his own regulation is "controlling unless plainly erroneous or inconsistent with the regulation"); *United States v. Cinemark USA, Inc.*, 348 F.3d 569, 578 (6th Cir. 2003) ("When an agency is interpreting its won regulations, even greater deference is due to the agency's interpretation."). Recently, the Supreme Court reemphasized that agency opinions can be given"deference whatever its form, given the [agency's] specialized experience and broader investigations and information." *United States v. Mead*, 533 U.S. 218, 234 (2001) (quoting *Skidmore v. Swift*, 323 U.S. 134, 139 (1944)).

In rejecting the Secretary's opinion as to what satisfies the "unduly disrupt" standard, the district court first concluded that "the regulation [29 CFR § 553.25] ... is not ambiguous." The district court also found the Secretary's position "unreasonable" given the purpose of §207(o) "to ameliorate the burdens associated with necessary changes in employment practices" that the FLSA imposed on public employers. (Citing *Moreau v. Klevenhagen*, 508 U.S. 22, 26 (1993).) In its opinion, the district court adopted the City's argument:

Defendant persuasively argues that, if public employees knew that they would be required to pay overtime to substitute officers in order to accommodate each and every compensatory time request, the savings purpose of §207(o) would be defeated and no employer would enter into a compensatory time agreement. If plaintiffs are correct, the granting of compensatory time in lieu of cash compensation becomes merely a method for the creation of additional overtime. It would be less expensive for defendant to pay

all overtime in cash in the first place than to pay it in compensatory time and then have to pay overtime compensation to substitute officers when that compensatory time is used. The Department of Labor's interpretation of §207(o) defeats the whole purpose of compensatory time. Thus, this Court does not find it has the power to persuade.

(J.A. at 195).

We respectfully disagree with the district court's conclusions for several reasons. First, the phrase "unduly disrupt" is inherently ambiguous because to give this phrase meaning requires a specific factual scenario that can give rise to two or more different meanings of this phrase. The existence of the Secretary's regulation, opinion letters, and amicus brief on the meaning of "unduly disrupt" in Section 207(o)(5) reflects the Secretary's recognition that the phrase is ambiguous and needs interpretation to ascertain its meaning. As discussed below, the judicial decisions that differ on the proper interpretation of Section 207(o)(5) also reflect this ambiguity.

Under *Chevron,* when a statute is ambiguous and Congress grants rulemaking authority, as here, the courts should defer to the Secretary's interpretations of "unduly disrupt," especially where, as here, the regulation and its interpretation have been consistently applied since 1987. Under *Christensen* and *Mead*, we conclude that the Secretary's opinion letter must be given deference and that the Secretary's *amicus* brief be accepted as persuasive authority.

Second, other provisions of the 1985 FLSA amendments and the legislative history of those amendments reveal that interference with government operations, not budgets, was the primary purpose of the "unduly disrupt" standard in Section 207(o)(5). To be sure, the 1985 FLSA amendments were designed to provide state and local governmental entities some financial relief from compliance with the FLSA. *Moreau,* 508 U.S. at 26. Congress's clear choice for this accommodation was compensatory time to be awarded "in lieu of overtime compensation." Congress, however, did not intend to relieve these governmental entities of all financial costs of overtime, as reflected in Section 207(o)(3)(A) that limits compensatory time to 480 hours and requires any excess to be paid in cash.

Moreover, the legislative history of Section 207(o)(5) reflects that the phrase "unduly disrupt" did not apply to financial impact on public employers' payrolls. The House of Representatives's Report reflects its intention that public employees should be able to enjoy the use of their accumulated compensatory time and that compensatory time should not be used to avoid overtime pay:

> The Committee is very concerned that public employee**s** in office with regular year-round functions, short staff, and steady demands will be urged to accrue many hours of compensatory time and then encounter difficulty in being able to make beneficial use of the accumulated compensatory time. *It is the committee's view that an employee should not be coerced to accept more compensatory time in lieu of overtime pay in a year than an employer realistically and in good faith expects to be able to grant to that employee if he or she requests it within a similar period. To do otherwise would permit public employers to enjoy the fruits of the overtime labor of employees without having to pay the overtime premium required by the Act. Clearly, compensatory time is not envisioned as a means to avoid overtime compensation.* It is merely an alternative method of meeting that obligation.

House Report No. 99-331, 99th Cong. 1st Sess. 23 (1985) (emphasis added).

The Senate Report on the 1985 FLSA amendments provides an example of what "unduly disrupt" in section 207(o)(5) means:

> The employee also has the right to use some or all of his accrued comp time within a reasonable period after requesting such use, provided that this does not unduly disrupt

the employer's operation.  Use of the term 'reasonable' is intended to accommodate varying work practices based on the facts and circumstances of each case.  When an employer receives such a request for the use of comp time, that request should be honored unless to do so would be unduly disruptive.  *By 'unduly disruptive,' the committee means something more than mere inconvenience. For example, a request by a snow plow operator in Maine to use 40 hours of comp time in February probably would be unduly disruptive. This would be true whether the request was made 48 hours or several months in advance.  On the other hand, the same request by the same employee for the same number of hours in June would not be unduly disruptive.*

SR. 99-159, 1985 U.S.C.N. 651, 660 (emphasis added).

From this legislative history[3] of Section 207(o)(5), we conclude that its "unduly disruptive" limitation was intended to apply to actual governmental operations, not the fiscal impact of compensatory leave.

The Secretary's opinions on the "unduly disruptive" provision in Section 207(o)(5) are consistent with the legislative reports that compensatory time should not be used to avoid overtime pay and that "unduly disrupt" applies to governmental operations, not finances.  Thus, the Secretary's opinion that the mere payment of overtime to honor a request for compensatory leave does not qualify as "unduly disruptive" is wholly consistent with Section 207(o)(5) and its legislative history.  The Secretary's opinion is also consistent with Supreme Court precedent that FLSA's overtime provisions were intended to create the incentive to hire more workers, not to overwork the existing workforce.  As the Supreme Court observed about the overtime provisions of the FLSA: "Section 7(a) achieves its dual purpose of inducing the employer to reduce the hours of work and to employ more men and of compensating the employees for the burden of a long workweek." *Walling v. Younderman-Reynolds Hardwood Co.*, 325 U.S. 419, 423-24 (1945).  Here, the City appears to be utilizing the FLSA to avoid payment of overtime and to avoid adding personnel to meet its actual operational needs.  Thus, the district court erred in failing to defer to the Secretary's opinion on the meaning of "unduly disrupt" in Section 207(o)(5).

District courts in other circuits have deferred to the Secretary's interpretation of "undue disruption," holding that the requesting employee must be granted compensatory time even if to do so means that the replacement officer must be paid overtime. *Debraska*, 131 F.Supp.2d. at 1037; *Canney v. Brookline*, 142 Lab. Cas. ¶ 34,169 (D.Mass. 2000); *Long Beach Police Assn. v. Luman*, 8 Wage & Hour Cas. 2d (BNA) 1395 (C.D.Cal.  2001).

Third, the district court also erred in its interpretation and reliance upon *Aiken* which addressed the "reasonable request" clause in Section 207(o)(5).  *Aiken* also relied upon the language of the CBA that defined "the conditions under which an employee can take compensatory time off."  As stated in *Aiken*:

Plaintiffs contend that the payment of overtime to an officer so that another can use banked compensatory time is not an undue disruption.

\* \* \*

---

[3] The City cites eloquent statements of individual members of Congress in support of its interpretation of FLSA. "[O]rdinarily even the contemporaneous remarks of a single legislator who sponsors a bill are not controlling in analyzing legislative history." *Chrysler Corp. v. Brown*, 441 U.S. 281, 311 (1979).  The Supreme Court considers legislative reports more persuasive. "In surveying legislative history we have repeatedly stated that the authoritative source for finding the Legislature's intent lies in the Committee Reports on the bill, which 'represen[t] the considered and collective understanding of those Congressmen involved in drafting and studying the proposed legislation'." *Garcia v. United States* 469 U.S. 70, 76 (1984) (quoting *Zuber v. Allen*, 396 U.S. 168, 186 (1969)).

The fundamental defect in the plaintiffs' position, however, is that it completely ignores the phrase "reasonable period," which the Act gives the parties the freedom to define.

* * *

In this case, the city and the plaintiffs' union had an agreement on the issue of compensatory time. The agreement provided "the conditions under which an employee can take compensatory time off." 29 C.F.R. § 553.25. These include a condition that once a certain number of officers requested a specific day off, the commanding officer may close the precinct's log book for that day. *The city and the union in this case have agreed, then, that the reasonable period for requesting the use of banked compensatory time begins thirty days prior to the date in question and ends when the number of officers requesting the use of compensatory time on the given date would bring the precinct's staffing levels to the minimum level necessary for efficient operation. We are loath to interfere with this agreement.* Therefore, we conclude that the district court did not err by finding for the city on this claim.

*Id*. at 756-57. (emphasis added).

*Aiken*'s holding involved only the "reasonable request" provisions in Section 207(o)(5) and 29 C.F.R. § 553.25. As the dissent in *Aiken* noted: "Neither the district court nor the majority here come squarely to grips with the plaintiffs' claim that they are, on some occasions, being denied compensatory time off for reasons forbidden under the [FLSA] and its implementing regulations." 190 F.3d at 762 (Ryan, J., dissenting); accord. *Debraska*, 131 F. Supp. 2d at 1036-37. In contrast, this action centers on the "unduly disrupt" clause in Section 207(o)(5), as the district court concluded in a footnote:

> Although the parties mention the "reasonable period" provision of § 207(o), there is no genuine dispute as to whether requests to use compensatory time are granted within a reasonable period. Rather, the real dispute concerns defendant's policy of granting compensatory time only up to the point where the minimum car plan is full and refusing to allow officers who would be compensated at the overtime rate to substitute for the officer requesting the use of compensatory time.

(JA at 190 n.14).

Thus, we conclude that *Aiken* is not controlling here especially in light of *Christensen*, which was decided after *Aiken*. *Christensen* concluded that, unless authorized by its provisions, § 207(o)(5) prohibits the denial of compensatory leave. In *Christensen*, the Supreme Court stated that "§ 207 (o)(5) is more properly read as a minimal guarantee that an employee will be able to make some use of compensatory time when he requests to use it. As such, the proper *expressio unius* inference is that an employer may not, at least in the absence of an agreement, deny an employee's request to use compensatory time for a reason other than that provided in § 207(o)(5)." 529 U.S. at 583. We are dealing here with a distinct statutory right under the FLSA that is not modified by a CBA.

Fourth, as a factual matter, although the CBA allows the City to determine the overtime hours and police department's "operational needs," the actual basis for the City's denials of the officers' compensatory leave requests is not a lack of staffing, but financial considerations. Financial impact is not set forth in the CBA as a basis for the City to deny police officers' compensatory leave requests. Moreover, the CBA does not define "operational needs" and Beck's testimony about the *ad hoc* system of administering the staffing policy creates a material factual dispute about the City's reliance on its car plan to justify its denials of compensatory leave. Absent an express agreement that financial considerations can be used to deny compensatory leave, we conclude that the Secretary's interpretation of Section 207(o)(5) should control.

Without express language in the CBA authorizing the use of financial impact to deny requests for compensatory leave, we are also reluctant to infer a waiver of these employees' statutory rights. *Christensen* interpreted Section 207 (o)(5) as prohibiting the denial of compensatory leave absent the presence of a statutory condition. 529 U.S. at 583. In the labor context, including decisions under the FLSA, the Supreme Court has not allowed labor agreements to defeat an employee's statutory rights:

> While courts should defer to an arbitral decision where the employee's claim is based on the rights arising out of the collective-bargaining agreement, different consideration apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers.
> ***
> This Court's decisions interpreting the FLSA have frequently emphasized the nonwaivable nature of an individual employee's right to a minimum wage and to overtime pay under the Act. Thus, we have held that FLSA rights cannot be abridged by contract or otherwise waived because this would "nullify the purposes" of the statute and thwart the legislative policies it was designed to effectuate.

*Barrentine v. Arkansas-Best Freight Systems, Inc.*, 450 U.S. 728, 737, 740 (1981).

Moreover, courts interpreting the "unduly disrupt"standard consider proof of the effects of the compensatory leave requests upon actual police operations. In *Houston Police Officers Union, et al. v. City of Houston*, 330 F.3d 298 (5th Cir. 2003), *cert. denied* 124 S. Ct. 300 (2003), the Fifth Circuit rejected the police officers' argument that, under Section 207(o)(5), compensatory leave must be made available upon an officer's request. There, the City of Houston required a police officer who desired to use his/her accrued compensatory time to sign his/her name in a "Red book" kept by each unit for that purpose. *Id.* at 300 Each unit had a limit on the number of officers who could be off on a given day, that, in effect, was 10% of the officers in the unit. *Id.* at 301. If the limit had been reached when an officer requested the leave, the officer was denied leave for that day. The Fifth Circuit first "conclude[d] that [Section 207(o)(5)] does not require a public employer to authorize comp-time use as specifically requested by an employee (subject to the undue disruption clause), but instead requires that the comp time be permitted within a reasonable time after the employee requests its use." *Id.* at 304

In *Houston*, the city's denial of an officer's leave request "was based upon the shift's commander's estimate of the unit's manpower needs. The primary considerations in formulating this estimate were the unit's anticipated workload (based on historical trends), the unit's efficiency, and the unit's ability to tolerate disruption in its operations." *Id.* at 300-01. The Fifth Circuit found that the city's system did not violate §207(o)(5) of the FLSA, based upon expert proof about the effects of the City's actual operation of its compensatory leave policy:

> We also note, moreover, that [the undue disruption] exception would be void of legal significance even if the Union's reading of the FLSA were correct. This is so because requiring comp-time usage-on-demand would, as *Dr. Jeanneret's uncontroverted analysis* concludes, "unduly disrupt" the operations of the HPD. As he said:
>
> *Such understaffing would severely impact the operational efficiency and effectiveness of HPD and undermine the Department's continued efforts to provide the required levels of service within the budget allocations provided in the City of Houston.*

> In other words, local neighborhoods could be seriously adversely affected when too many regular duty officers are off work. The FLSA requires, generally, that officers be allowed to take comp time within reasonable periods after making their requests. *The burden that this statute places upon public employers is waived, however, in those circumstance where compliance would "unduly disrupt the operations of the public agency."* This balance represents the statutory compromise between the interests of public agencies and their employees. *Without adequate evidence placing Dr. Jeanneret's conclusion of undue disruption into dispute, this court must conclude, as did the district court, that the Union has no claim cognizable under section 207 (o)(5).*

*Id.* at 306-07 (emphasis added).

Here, the factual record tends to establish that the City's principal and motivating consideration for the denials of the Police Officers' compensatory leave requests was solely financial, i.e., the payment of overtime to substitute officers. Thus, *Houston* is factually inapposite because the "primary considerations" for the denial of compensatory leave in *Houston* were the consequences on the unit's operations and ability to serve the city's and unit's needs. As reflected in the district court's findings of fact, this record reveals that the controlling factor here is the financial consequences of granting the Police Officers' otherwise timely requests for compensatory leave.

The City also relies upon the recent Ninth Circuit decision in *Mortensen v. County of Sacramento*, 368 F.3d 1082 (9th Cir. 2004). *Mortensen*, holds that "the text of § 207(o)(5) unambiguously states that once an employee requests the use of CTO [compensatory time off], the employer has a reasonable period of time to grant the request [and] that the county's implementation of its leave policy, which may result in denying a specific request when there are no available leave openings and the parties' Agreement regarding [compensatory time off] use are consistent with § 207(o)(5)." 368 F.3d at 1084.

As we noted earlier about *Aiken*, *Mortensen's* holding involves primarily the reasonable-period-of-time clause in Section 207(o)(5) for granting compensatory leave request. This clause is not as issue in this appeal. In addition, *Mortensen* is distinguishable as it concerns a denial of a singel police officer's request for leave. Here, the issue is the City's systemic denial of police officers' accrued compensatory leave based upon the undue disruption clause in Section 207(o)(5).

To be sure, *Mortensen* comments that an officer cannot "force the county to pay another deputy overtime so that he could use his CTO [compensatory time off]" because "then the purpose of § 207(o) would be eviscerated. This requirement would burden the county considerably by increasing the overtime that it must pay to employees. If implemented, [the officer's] proposed construction would remove the flexibility and control from the county that is clearly contemplated by the FLSA." 368 F.3d at 1090.

To the latter conclusion, we respectfully disagree for several reasons. First, to grant the City the unlimited discretion to deny compensatory leave requests relieves the City of establishing the undue disruption requirement imposed by Congress. Second, the undue disruption clause is ambiguous and the Secretary's regulations that a City cannot deny compensatory leave merely to avoid payment of overtime to a substitute officer should obtain here. To comply with the Act and its legislative history, the City should be required to make a factual showing of undue disruption, financial or otherwise. The City possesses the facts necessary to prove the alleged undue disruption. We therefore decline to adopt a wholesale deference rule that would allow the City to adopt a compensatory leave policy that deprives the officers of the enjoyment of their accrued leave that Congress awarded and intended public employees to enjoy. Such an unlimited rule of deference

defeats the purposes of the Act, as reflected in its legislative history and the Secretary's regulations as well as relevant Supreme Court precedent by allowing the City to overwork its existing police officers when circumstances require the hiring of new officers. *See supra* at pp.14-15.

We find more persuasive those district court decisions that apply the Secretary's regulations and opinions on Section 207(o)(5). In *Debraska*, the police officers sued the city of Milwaukee for violating the FLSA by turning down their compensatory time requests when granting leave would require the city to pay replacement officers overtime or to call other officers as replacements from other shifts. The city argued that its policy did not violate the FLSA because the city always granted compensatory time within one week of the requested date, which it contended is a "reasonable period" under the statute. 131 F. Supp. 2d at 1034. The district court disagreed and found that the phrase "reasonable period" in section 207(o)(5) was ambiguous and deferred to the DOL's interpretation of Section 207(0)(5). *Id.* at 1034-36. As to the "unduly disrupt" rule, the district court stated:

> I note, however, that the Secretary has opined in the sources quoted above that the mere fact that a comp time request might require another officer to work overtime does not, by itself, cause undue disruption. It is possible that adopting the measures proposed by the plaintiffs would in some cases or perhaps many cases impose an unreasonable burden, depending on the circumstances. The determination of that issue will have to await further proceedings.

*Id.* at 1037.

In *Canney*, the question was whether the police department's system to deny an officer's leave request for a particular day as accrued compensatory time where to do so required the city to pay another officer at an overtime rate. The district court held that the payment of overtime to substitute officers did not constitute an undue disruption, but added that: "On the present record nothing indicates that having to pay one or more officers overtime in cash, to permit another officer to take compensatory time would effect the police department's 'ability to provide services of acceptable quality and quantity.'" 142 Lab. Cas. at 52,449.

*Debraska* and *Canney* suggest that to rely upon the financial impact of paying overtime to substitute officers to justify denial of compensatory leave under Section 207(o)(5), the public employer must present clear proof of disruption of services. This record, however, does not allow us to reach a conclusion on whether the financial impact on the City from granting the Police Officers' timely requests for compensatory leave would establish "undue disruption" of police services within the meaning of Section 207(o)(5). The City did not present any proof of the financial impact on the police department's budget from the Police Officers' timely leave request. The City did not offer any proof as to how that sum impacted the City's finances. The district court inferred an adverse financial impact upon the City based solely on the amount of the Police Officers' accumulated leave. The City did not present any proof on the total amount of compensatory leave denied Police Officers under its policy, a factor that if high enough would defeat the congressional purpose in establishing compensatory leave for public employees. Nor is there expert proof that the City's operational needs would be unduly disrupted by granting the Police Officers' leave requests. Based upon the testimony of the union's president, there is a material factual dispute on whether the City's car unit plan is the actual basis for determining a police unit's operational needs.

In our view, invalidation of the Police Officers' statutory rights under Section 207(o)(5) requires a clear showing of the City's entitlement to the undue disruption exception to awards of accumulated compensatory leave. The Police Officers' compensatory leave requests must be

granted absent "clear and affirmative evidence"[4] of an undue disruption of the City's provision of police services for its citizens that is the controlling consideration under the "unduly disrupt" standard in Section 207(o)(5).

For these reasons, we **REVERSE** the district court's judgment and **REMAND** the case for further proceedings on the purpose and effect of the City's administration of its compensatory leave for police officers.

---

[4]The "unduly disrupt" provision is in the nature of an exception to or an exemption from an award of FLSA compensatory leave benefits. In such instances, we have required that "[t] the [employer] must establish through 'clear and affirmative evidence'... every requirement of the exemption. The exemptions are to be narrowly construed." *Ale v. Tenn. Valley Auth.*, 269 F.3d 680, 691, n.4 (6th Cir. 2001)(quoting *Roney v. United States*, 790 F. Supp. 23, 26 (D.D.C. 1992), and citing *Arnold v. Ben Kanowski Inc.*, 361 U.S. 388, 392 (1960), and *Douglas v Argo-Tech Corp*, 113 F.3d 67, 70 (6th Cir. 1997)).