OPINION
McKEAGUE, Circuit Judge.
Amanda McGinnis Flynn sued her boyfriend (and now husband) Scott Flynn and Defendant State Farm Mutual Automobile Insurance Company seeking to recover for Scott Flynn’s alleged negligence arising out of a January 20, 2010 automobile accident when Amanda’s car rear-ended a semi-tractor trailer. Amanda also asserted claims for declaratory judgment and bad faith against State Farm, alleging that Scott Flynn was entitled to coverage for the accident under policies issued by State Farm to Scott’s mother and father. The parties filed cross-motions for summary judgment on the issue of whether the State Farm policies provide coverage for the accident to Scott Flynn. The district court issued an order granting State Farm’s Motion for Summary Judgment and denying Amanda Flynn’s CrossMotion for Summary Judgment, finding that Scott Flynn was not entitled to coverage for the accident. For the reasons stated below, we AFFIRM.
I.
On January 20, 2010, Amanda Flynn (“Amanda”) was a passenger in her own automobile, which was being driven by her then-boyfriend (and now husband) Scott Flynn (“Scott”) to an apartment in Lebanon, Ohio that she and Scott shared with his mother, Sallie Flynn (“Sallie”). They were traveling southbound on 1-75 in Dayton, Ohio when Scott glanced down at his cell phone and failed to see that the traffic ahead had stopped. Scott was unable to stop Amanda’s car in time and the car collided with the rear of the semi-tractor *432 trailer. Scott and Amanda were injured as a result of the accident.
Amanda filed suit against Scott and State Farm on July 8, 2011 in the Hamilton Court of Common Pleas, alleging claims against Scott in negligence and negligence per se, as a result of the accident. Amanda also asserted claims for declaratory judgment and bad faith against State Farm, claiming that Scott was entitled to coverage for the accident under the State Farm policies issued to Scott’s mother, Sallie, and to Scott and his father, Stephen Flynn.
In November 2011, the parties reached a partial settlement with Amanda’s insurer, Nationwide Insurance, and Amanda dismissed her claims against Scott with prejudice. With the dismissal of Scott, the parties were diverse and State Farm removed the case to the United States District Court for the Southern District of Ohio on December 19, 2011 pursuant to 28 U.S.C. § 1332. The parties then consented to jurisdiction by the magistrate judge assigned to the case. The parties agreed that there was no genuine dispute as to any material facts and filed cross motions for summary judgment. On March 12, 2013, the magistrate judge granted State Farm’s Motion for Summary Judgment and denied Amanda’s Motion for Summary Judgment. The magistrate judge found that Amanda was not covered under either State Farm policy as her car was not a “non-owned car.”
II.
A. Standard of Review
We review de novo a district court’s grant of summary judgment. Williams v. Mehra, 186 F.3d 685, 689 (6th Cir.1999). Summary judgment is proper when “the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.” [1] Fed.R.Civ.P. 56(a). When reviewing a grant of summary judgment, we must view the evidence and draw all reasonable inferences in favor of the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). For cross-motions for summary judgment, the court must review each motion on its own merits and view all facts and inferences in the light most favorable to the non-moving party. Beck v. City of Cleveland, 390 F.3d 912, 917 (6th Cir.2004). This Court has recognized that the filing of cross-motions for summary judgment does not necessarily mean that the *433 award of summary judgment is appropriate. Id.
B. State Farm Policies at Issue
As the only issue for this Court to review is the interpretation of the two insurance policies at issue, we will begin by addressing the specific language of the State Farm policies[2] at issue.
The State Farm insurance policy at issue is an automobile policy issued to Sallie Flynn (the “policy”). The policy provides $100,000 per person of bodily injury or property damage liability. The “Liability Coverage” section of the policy provides that State Farm will:
1. pay damages which an insured becomes legally liable to pay because of:
a. bodily injury to others, and
b. damage to or destruction of property including loss of its use, caused by accident resulting from the ownership, maintenance or use of your car....
R. 13-1, Sallie Flynn Policy at 12, PagelD # 112. The policy provides that the “liability coverage extends to the use, by an insured, of a newly acquired car, a temporary substitute car or a non-owned car.” Id. The policy defines a “non-owned car” as follows:
Non-Owned Car — means a car not owned by, registered to or leased to: any other person residing in the same household as you, your spouse or any relative;....
Id. at 8, PagelD # 108.
When a “non-owned car” is referenced in the policy, the policy specifically defines an “insured” to mean:
1. the first person named in the declarations;
2. his or her spouse;
3. their relatives;[3] and
3. any person or organization which does not own or hire the car but is liable for its use by one of the above persons.
Id. at 12, PagelD # 112.
In order for this Court to determine whether Amanda’s car qualifies as a “non-owned” car, we must interpret whether Amanda was a “person residing in the same household ” as Scott and Sallie Flynn. R. 13-1, Sallie Flynn Policy at 8, PagelD # 108. If Amanda was “residing in the same household” as Scott and Sallie, then Amanda’s car will not be considered a “non-owned car” under either policy and State Farm will not be liable to indemnify Scott for damages owed to Amanda.
C. Interpretation of the State Farm Policy
1. Contract Interpretation Principles in Ohio
Under Ohio law, an insurance policy must be interpreted in accordance with the *434 rules of construction applicable to other contracts.[4] Hybud, Equip. Corp. v. Sphere Drake Ins. Co., 64 Ohio St.3d 657, 597 N.E.2d 1096, 1102 (1992). The Supreme Court of Ohio has stated that “when words used in a policy of insurance have a plain and ordinary meaning, it is neither necessary nor permissible to resort to construction unless the plain meaning would lead to an absurd result.” Travelers Indemnity Co. v. Reddick, 37 Ohio St.2d 119, 308 N.E.2d 454, 456 (1974). When the terms of an insurance policy are clear and unambiguous, the interpretation becomes a matter of law. See Inland Refuse Transfer Co. v. Browning-Ferris Indus. of Ohio, Inc., 15 Ohio St.3d 321, 474 N.E.2d 271, 272 (1984). However, when an insurance policy is ambiguous, a contract of insurance should be construed liberally in favor of coverage and strictly against the insurer when the meaning of the language is uncertain. Entenman v. Auto-Owners Ins. Co., 136 Ohio App.3d 541, 737 N.E.2d 119, 123-24 (2000) (noting the “well settled legal principle establishing that ambiguous words in an insurance contract must be construed in favor of the claimant seeking coverage”).
1. Definition of “Residing in the Same Household ”
Both parties agree that the term “residing in the same household” is not defined in State Farm’s policies, but they dispute the proper interpretation of that term. State Farm contends that Amanda’s car does not qualify as a “non-owned car” because Amanda was “residing in the same household” with Sallie and Scott at the time of and preceding the accident. In support, State Farm cites testimony from Amanda and Scott describing their living situation, specifically showing that Amanda was living in an apartment in Lebanon, Ohio with Sallie and Scott from August 2009 to January 2010. State Farm argues that Amanda’s living arrangement with Sallie demonstrates that she was a “resident” of the household and not a temporary or transient visitor.
Amanda counters State Farm’s interpretation by asserting that “household” is an undefined term in State Farm’s policy and therefore is ambiguous. Amanda argues that the district court erred in not relying on “intent” as the primary factor in determining whether someone is “residing in a household.” Amanda claims that she was only temporarily living in Sallie’s home and she never intended to stay in Sallie’s apartment beyond a brief period of time. Accordingly, she asserts that the district court should be reversed.
In claiming that the term “household” is ambiguous and capable of multiple meanings, Pet.’s Br. at 13-19, Amanda overlooks the well-developed Ohio case law on this issue. The Supreme Court of Ohio has held that, in determining whether an individual is “residing in the same household,” the term “household” is defined as “[tjhose who dwell under the same roof and compose a family: a social unit comprised of those living together in the same dwelling place.” Shear v. West American Ins. Co., 11 Ohio St.3d 162, 464 N.E.2d 545, 548 (1984) (citing Webster’s Third New International Dictionary). Accordingly, the term “residing in the same household” has been defined as “one who lives in the home of the named insured for a period of some duration or regularity, although not necessarily there permanently, but excludes a temporary or transient visitor.” Farmers Insurance of Columbus, Inc. v. Taylor, 39 Ohio App.3d 68, 528 *435 N.E.2d 968, 969 (1987). All twelve of Ohio’s appellate districts have adopted this definition of “residing in the same household.” [5] The fact that the individuals may be fully-emancipated is irrelevant in the analysis of whether someone resides in a household, absent evidence demonstrating an “arm’slength living arrangement.” Shear, 464 N.E.2d at 549.
While Amanda argues that the term “residing in the same household” is open to multiple interpretations,[6] this Court is unpersuaded. This Court has recognized that “the mere absence of a definition in an insurance contract does not make the meaning of the term ambiguous.” State Farm Fire & Cas. Co. v. Wilson, 158 Fed.Appx. 952, 956 (6th Cir.2005) (unpublished) (citing Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm, 73 Ohio St.3d 107, 652 N.E.2d 684, 686 (1995)). The fact that the State Farm policies do not expressly define the term does not make the term ambiguous, as Ohio courts have expressly adopted a definition of “residing in the same household.” Several Ohio courts have even stated that the definitions of “household” and “residing in the same household” are well established. See, e.g., Grange Ins. Co. v. Stubbs, No. 11AP-163, 2011 WL 5185572, at ¶ 17-18, 2011 Ohio App. LEXIS 4598, at ¶ 17-18 (Ohio Ct. App. Nov. 1, 2011); Rock v. Mich. Mut. Ins., Co., No. 80742, 2002 WL 31124414, ¶ 18, 2002 Ohio App. LEXIS 5123, ¶ 18 (Ohio Ct.App. Sept. 26, 2002).
2. Significance of Familial Relationship to “Residing in the Same Household ”
Amanda largely relies on the case of Napier v. Banks, which held that the pur *436 pose of a “non-owned car” provision was to “protect the insurer from a situation where an insured would pay for but one policy and be covered while regularly driving other automobiles owned by members of his family.” 19 Ohio App.2d 152, 250 N.E.2d 417, 419 (1969).[7] In Napier, the court held that the term “household” was synonymous with “family.” Id. Accordingly, Amanda argues that as the definition of “household” is tied to family, she cannot be considered a resident of Sallie’s home. See also Pet. Rep. Br. at 3-4. Amanda also relies on Napier for the proposition that the primary factor to consider in determining whether a person is a “resident” is his or her intent to stay at a certain location. 250 N.E.2d at 418; see also American States Ins. Co. v. Guillermin, 108 Ohio App.3d 547, 671 N.E.2d 317, 321-22 (1996).
This Court is unpersuaded. While the Twelfth Appellate District in Napier stated that “the ‘same household’ necessarily involves but one household, and, ordinarily, the word ‘household’ is synonymous with ‘family,’ ” this case must be taken in the context of Ohio’s current jurisprudence. 250 N.E.2d at 419. As decided in Shear, the term “household” is now given the “common, ordinary, usual meaning” of “those who dwell under the same roof and compose a family: a social unit comprised of those living together in the same dwelling place.” 464 N.E.2d at 548. Admittedly, the definition of “household” set forth in Shear includes the word “family,” but the definition does not end there. The definition of “household” is compound: a “household” can compose a “family” and can also compose a “social unit” consisting of people “living together in the same dwelling place.” Shear, 464 N.E.2d at 548.[8] Accordingly, we cannot agree with Amanda’s contention that the term “household” mandates a familial relationship.
3. Individual’s Subjective Intent to Reside
Furthermore, Amanda’s claim that an individual’s subjective intent is the determinative factor in deciding whether a person is a member of a “household” is without basis in law. Ohio courts have certainly emphasized that a factor to consider when determining whether a person is a member of a “household” is whether the living arrangement is “temporary” or “non-temporary.” See Shear, 464 N.E.2d at 549 (considering whether individuals were a “household” and stating that there was no evidence of the arrangement being “temporary in nature”); Guillermin, 671 N.E.2d at 321 (citing Shear for the proposition that the non-temporary nature of the domestic living arrangements *437 is a factor in determining if relatives are members of the same household); Napier, 250 N.E.2d at 419 (determining that the “relatively brief period of occupancy preceding the accident and the temporary nature of the arrangement, when coupled with all other circumstances,” warranted against finding that the parties were a “household”). While some Ohio appellate courts have considered a party’s intent in staying in a residence to determine whether someone is a member of a household, none of the cases Amanda cites state that the party’s intent is the determinative factor in establishing residency. Rather, courts can consider the temporary or non-temporary nature of the living arrangement to determine whether a person is a member of a “household,” along with the other factors the Supreme Court of Ohio has outlined. There is no case law to suggest that the temporary nature of a person’s stay in a household negates other factors indicative of the fact that a person is “residing in the same household.” Accordingly, this Court finds that the phrase “residing in the same household” is unambiguous and that Ohio courts have adopted a clear definition of the term.
D. Application of “Residing in the Same Household” to the Instant Case
The district court determined that the undisputed facts showed that Amanda was residing in Sallie’s household at the time of the January 2010 accident. The district court noted that Amanda “stayed at the household every night for five months from August 2009 to January 2010; received her mail there; and had no other dwelling.” R. 22, District Court Order at 9, PagelD # 1476. The district court observed that Amanda frequently ate meals with the Flynns, which lent further support to the conclusion that she was residing in the Flynn household. Id. The district court considered the fact that Amanda claimed that she was planning on moving out of the Flynn household; however, the court held that “intent” was only one of several factors for the court to consider. Id. at 10, PagelD # 1477. The district court determined that the fact that Amanda planned to move did not negate her status as a “resident” of Sallie’s household. Id. Accordingly, the district court concluded that State Farm was entitled to summary judgment on Amanda’s claims for declaratory relief.
Viewing the undisputed facts in a light most favorable to Amanda, the record is clear that Amanda was “residing in the same household” as Sallie and Scott. Amanda had been living with Sallie and Scott for approximately five months, from August 2009 through January 2010.[9] Amanda did not pay rent or utilities at the apartment. Amanda had her own keys to the Flynn residence and stayed there ev *438 ery night in a separate bedroom. Amanda also completed a “change of address” form with the U.S. Postal Service to have all of her mail forwarded to Sallie’s apartment. Amanda put all of her furniture and belongings, with the exception of her clothes, in a storage facility in Lebanon, Ohio. Ultimately, Amanda had no place to live other than Sallie’s apartment. While Amanda may have expressed an intention to move out of Sallie’s apartment in the near future, she had not taken any action to sign a lease or make plans to move out of Sallie’s apartment.[10] There was no “arm’s-length” relationship between the parties. Shear, 464 N.E.2d at 549. Accordingly, Amanda was “residing in the same household” as Sallie, and Amanda’s car does not qualify as a “non-owned car” under the State Farm policies.
III.
Based on the facts in the record, we AFFIRM the district court’s grant of summary judgment in favor of State Farm. Based on the definition of “residing in the same household” adopted by the Supreme Court of Ohio and all Ohio appellate districts, the district court correctly held that Scott was not entitled to coverage for the accident under the State Farm policies at issue.

. Amanda claims that one of the reasons summary judgment is not appropriate in this matter is because Ohio courts have held that the term "residency in the same household” constitutes an issue of fact, which must be determined by the jury. Amanda cites Wood v. McQueen for this proposition. No. 68472, 1995 WL 558925, *6, 1995 Ohio App. LEXIS 4071, *17 (Ohio Ct.App. Sept. 21, 1995). In Wood v. McQueen, the appeals court stated that when a party's sworn statements are inconsistent with later deposition testimony, summary judgment is improper because there exists a question of credibility which can be resolved only by the trier of fact. id. In Wood, there was a genuine issue of material fact regarding whether someone was a "resident” based on contradicting evidence. Id. Accordingly, the court denied summary judgment as to this issue. Id. at *6-7, 1995 Ohio App. LEXIS 4071 at *18-19. However, the court in Wood never stated that determining whether an individual is "residing in the same household” is a question of fact for the jury. Rather, the court in Wood merely found the evidence to be contradicting, which precluded the court from entering summary judgment. Accordingly, this Court will follow existing Ohio law holding that the term "residing in the same household” is a legal question, for the court, if the term has a clear and unambiguous meaning. See Inland Refuse Transfer Co. v. Browning-Ferris Indus. of Ohio, Inc., 15 Ohio St.3d 321, 322, 474 N.E.2d 271 (1984).

. There are two policies at issue in this case: Sallie Flynn’s policy and Scott and Steven Flynn's policy. However, the language at issue in the policies is identical and the issue is identical: Whether Amanda’s vehicle qualifies as a ’’non-owned car” under the policy. Accordingly, we will only describe the details of Sallie Flynn's policy, as Amanda can collect under either policy only if her car is a "non-owned car.” As we hold that Amanda’s car does not qualify as a "non-owned car,” we find no reason to go into further interpretive questions involved with the State Farm Policy issued to Scott and Steven Flynn. See R. 22, Dist. Court. Op. at 11-14, PagelD # 1478-81.

. The policy defines "relative” as follows:
Relative — means a person related to you or your spouse by blood, marriage or adoption who resides primarily with you. It includes your unmarried and unemancipated child away at school.
R. 13-1, Sallie Flynn Policy at 9, PagelD # 109.

. As this matter was before the district court pursuant to diversity jurisdiction, this Court is bound to apply the substantive law of the State of Ohio. See Klaxon Co. v. Stentor Elec. Mfg., Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

. Clifton v. Martin, No. C-950376, 1996 WL 34142, at *1-2, 1996 Ohio App. LEXIS 256, at *4-5 (Ohio Ct.App. 1st Dist. Jan. 31, 1996); McDaniel v. Daly, No. 22453, 2008 WL 1921640, ¶ 68, 2008 Ohio App. LEXIS 1757, ¶ 68 (Ohio Ct.App. 2nd Dist. May 2, 2008); Carpenter v. United Ohio Ins. Co., No. 3-96-16, 1997 WL 232727, at *4-5, 1997 Ohio App. LEXIS 2012, at *12 (Ohio Ct.App. 3rd Dist. May 9, 1997); Comisford v. Erie Insurance Property Cas. Co., No. 10CA3, 2011 WL 1085147, 1(37, 2011 Ohio App LEXIS 1208, ¶ 37 (Ohio Ct.App. 4th Dist. Feb. 11, 2011); Keith v. State Farm Ins. Co., No. 06 CA 9, 2007 WL 1167391, ¶ 37, 2007 Ohio App. LEXIS 1695, ¶ 37 (Ohio Ct.App. 5th Dist. Apr. 20, 2007); Entenman v. Auto-Owners Ins. Co., 136 Ohio App.3d 541, 547, 737 N.E.2d 119 (Ohio Ct.App. 6th Dist.2000); Hill v. Cundiff, No. 05 CA 824, 2006 WL 2846286, ¶ 27, 2006 Ohio App. LEXIS 5259, ¶27 (Ohio Ct.App. 7th Dist. Sept. 28, 2006); Motorists Mut. Ins. Co. v. Henderson, No. 85557, 2005 WL 2388401, ¶ 27, 2005 Ohio App. LEXIS 4663, ¶ 27 (Ohio Ct.App. 8th Dist. Sept. 29, 2005); Grange Mutual Cas. Co. v. Norton, No. 10CA0105-M, 2011 WL 6016926, ¶ 8, 2011 Ohio App. LEXIS 5074, ¶ 8 (Ohio Ct.App. 9th Dist. Dec. 5, 2011); Grange Insurance Company v. Stubbs, No. 11AP-163, 2011 WL 5185572, ¶ 17, 2011 Ohio App. LEXIS 4598, ¶ 17 (Ohio Ct.App. 10th Dist. Nov. 1, 2011); Allstate Indemn. Co. v. Collister, No. 2006-T-0112, 2007 WL 2821984, ¶ 19, 2007 Ohio App. LEXIS 4601, ¶ 19 (Ohio Ct.App. 11th Dist. Sept. 28, 2007); Parker v. Patrick, No. CA2011-12-027, 2012 WL 2988764, ¶ 38, 2012 Ohio App. LEXIS 2915, ¶ 38 (Ohio Ct. App. 12th Dist. July 23, 2012).

. Amanda relies on caselaw from West Virginia, Virginia, and New York to support her argument that the term "residing in the same household” is ambiguous. See Drake v. Snider, 216 W.Va. 574, 608 S.E.2d 191, 197 (2004) and Rohlin v. Nationwide Mut. Ins. Co., 26 A.D.3d 749, 809 N.Y.S.2d 374, 375 (N.Y.App.Div.2006) and State Farm Mut. Auto. Ins. Co. v. Smith, 206 Va. 280, 142 S.E.2d 562, 566-67 (1965). This Court will not address these cases, as they are inapplicable to instant suit. The definition of "household” is settled in Ohio, and therefore the decisions in these other jurisdictions are not only inapplicable, but they are contrary to substantive Ohio law. See Pennington v. State Farm Mut. Auto. Ins. Co., 553 F.3d 447, 450 (6th Cir.2009) (noting that the substantive law of the forum state must be applied in diversity cases) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)).

. While the court in Napier mentioned the policy-reason behind "non-owned car” provisions in insurance policies, the parties do not raise any arguments regarding the policy implications of the interpretation of the phrase "residing in the same household” on appeal and therefore this Court will not address this question.

. A brief overview of the contract at issue in Shear is also instructive. In Shear, the insurance contract at issue provided that coverage was extended to "relatives living in your household.” Shear, 464 N.E.2d at 548. However, the term "household” was not defined in the policy. Id. As the policy at issue in Shear provided coverage for "relatives living in your household,” it is not surprising that the definition of "household” the court chose to use included the term "family.” However, the State Farm policy at issue in this case defines a non-owned car as a car not owned by a "person ... residing in the same household” as the policyholder. Accordingly, the fact that the State Farm policy at issue here does not explicitly provide coverage to "relatives living in your household” is an important factual distinction to explain the inclusion of the term "family” in the Shear definition of "household.”

. The case of Thompson v. Preferred Risk Mut. Ins. Co., 32 Ohio St.3d 340, 513 N.E.2d 733 (1987) is instructive. In this case, the Supreme Court of Ohio upheld the trial court’s conclusion that two brothers who lived together for only five months were residents of the same household and not separate, distinguishable households, id. at 734-35. As the court of appeals stated:
The brothers lived in the same single-family house, each had his own set of keys, and Richard had full use of his brother’s house, where he slept every night and shared meals with his brother and [a girlfriend of the brother’s]. There is no evidence in the record of an arms length arrangement, for although Richard helped with utility expenses and brought his own food, he did not pay a fixed amount of rent; nor did his brother expect him to do so. Richard testified he "helped out” with rent when necessary.
Thompson v. Prefened Risk Mut. Ins. Co., No. CA85-09-073, 1986 WL 5502, *3, 1986 Ohio App. LEXIS 6712, *8 (Ohio Ct.App. May 12, 1986).

. Amanda stated that her "intent” was to move out of the Flynns' apartment, and that she even searched for her own apartment prior to the accident. R. 15-1, Amanda Depo. at 57-58, PagelD #312-13. Amanda stated in a deposition that she planned to sign a lease for an apartment on Friday, January 22, 2010. Id. However, the accident averted these plans. Regardless of what Amanda's stated intention was, it does not mean that she was not residing in Sallie's household leading up to the time of the accident. As described in section II. C, while some Ohio appellate courts have considered a party's intention to move out of a location in determining whether they are a "resident,” this one factor is not determinative. The Supreme Court of Ohio has not considered a party’s "intention” in determining whether a person is "residing in the same household.”