NOT RECOMMENDED FOR PUBLICATION
File Name: 05a0828n.06
Filed: October 7, 2005

Nos. 04-4263, 04-4264

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| STATE FARM FIRE & CASUALTY CO., | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | NORTHERN DISTRICT OF OHIO |
| LONNIE WILSON et al., | ) | |
| | ) | |
| Defendants-Appellants. | ) | OPINION |
| | ) | |

**Before: GUY, BATCHELDER, and GILMAN, Circuit Judges.**

**RONALD LEE GILMAN, CIRCUIT JUDGE.** Lonnie Wilson pled guilty to sexual battery in connection with his assault on a coworker, Karen Smith, in January of 2003. Smith subsequently brought suit against Wilson and his wife in an Ohio state court, claiming damages for personal injuries that Smith sustained from the incident. The Wilsons sought coverage under their State Farm homeowners' insurance policy that was in effect at the time. State Farm then brought the present declaratory judgment action in federal court against the Wilsons and Smith, seeking a declaration that the Wilsons' policy did not require it to defend or indemnify the Wilsons in Smith's underlying state-court lawsuit. Applying Ohio law, the district court granted summary judgment in favor of State Farm.

On appeal, both the Wilsons and Smith argue that the district court erred in holding that Smith did not suffer a "bodily injury" as required for coverage under the State Farm policy. Having concluded that the assault on Smith did not constitute a "bodily injury" as defined in the policy, the

district court determined that State Farm had no duty to defend or indemnify the Wilsons against

Smith's claims.  For the reasons set forth below, we **AFFIRM** the judgment of the district court.


## I.  BACKGROUND

The facts of this case are both bizarre and distressing.  Lonnie Wilson, his wife Deborah

Wilson, and Smith were all employees of the United States Postal Service in Akron, Ohio.  There

was no direct working relationship between Lonnie and Smith, although both had offices in the same

building.  Smith, however, had been Deborah's supervisor in 2002, during which time Smith

selected another employee in lieu of Deborah for a promotion.  In response, Deborah had filed a

complaint with the Equal Opportunity Employment Commission (EEOC), but had not pursued the

complaint after the EEOC's investigation found no wrongdoing by either the Postal Service or

Smith.

At eight in the morning on January 27, 2003, Lonnie arrived at work wearing a tuxedo and

a full-length white coat.  Lonnie, who is 6'8" tall, proceeded to the building's kitchen, where he

cornered Smith, who is 5'3" tall, and angrily asked her: "Why do you keep berating my wife?"

When Smith did not immediately answer, Lonnie told her:  "Do not play with me.  Do what I tell

you to do.  I'm in charge of your destiny today."  Smith thought that perhaps Lonnie was joking until

he raised his voice and asked her: "Do you want to die?"  Although she did not see a weapon, Smith

now began to fear for her life.

Lonnie instructed Smith to go to her office, which she did, and he followed.  When they

reached Smith's office, Lonnie called Deborah on his cellular telephone.  He handed the telephone

to Smith, demanding that she apologize to his wife for having given the promotion to a white woman instead of to Deborah. (Smith and Deborah are both African-American women.) After Smith had apologized, Lonnie told her to take off all of her clothing. When she initially refused, Lonnie said: "Don't make me kill you." Lonnie had his hand in his pocket, causing Smith to fear that he had a weapon. Smith then removed all of her clothing. Lonnie told her to follow him out of the office and warned her that, "[i]f I turn[] around and you're not there, [or] you're not doing what I'm telling you to do, you're going to die."

Lonnie then marched Smith down the hall to the water cooler in the center of the work area. Two women came out of their offices and saw Smith, who was now naked, and Lonnie. They became very upset and asked what was happening. Lonnie told them to "shut up" because he was "in charge." When he was not looking, Smith tried to signal to the women to stay calm. Lonnie then ordered Smith, under threat of death, to lie down on the ground, fondle herself, and place her fingers in her mouth. This was all done in the presence of her coworkers. He then ordered her to stand and follow him to another part of the building that had no offices and was used only for storage. On the way to the storage area, Lonnie marched Smith past two male employees. She tried to signal to them for help, but both men backed up when Lonnie gestured menacingly in their direction.

Lonnie led Smith through the storage area to the other end of the building, which housed a post office. There they encountered two more female employees, who also became very upset upon seeing Lonnie and the disrobed Smith. Lonnie again ordered Smith to touch herself and then place her fingers in her mouth in the presence of her coworkers. He then ordered her to follow him back across the building to the area where their offices were located. Smith stated that, during this entire

time, Lonnie was "parading [her] through these offices . . . looking in the offices for other people to show them" what he was doing to her.

After Lonnie led Smith back to the kitchen, he directed her to lie down on the kitchen table. When she hesitated, he said: "Don't make me hurt you." Smith acquiesced to his demand and got on the table. But when Lonnie directed her to touch herself once more, she refused. Lonnie responded by grabbing her legs, spreading them apart, and rubbing himself against her. He then ordered her to put her arms around him and kiss him. Smith said "no," but Lonnie put his mouth on hers and attempted to kiss her anyway.

Lonnie then led Smith back to her office, where he ordered her to stand on a chair while he again attempted to kiss her. Smith asked him if she could put her clothing back on because she was cold, and he told her: "Yeah, yeah, you're going to need them anyway. You're coming with me." Smith stalled for time while putting her clothes on, desperately hoping that one of her coworkers had called the police and that help would be arriving soon. When she saw a maintenance man outside of her office motioning for her to run, Smith dashed out of her office while Lonnie had his back to her. Smith's coworkers hid her in another office after her escape. The police arrived a short time later and arrested Lonnie.

As a result of this incident, Lonnie was charged with sexual battery, kidnaping, abduction, gross sexual imposition, aggravated menacing, and failure to comply with a police order. In return for having the remaining charges dropped, Lonnie pled guilty to the charges of sexual battery and the failure to comply. He was sentenced to two years in prison. Lonnie has since been diagnosed with bipolar disease and a narcissistic personality disorder.

Smith did not return to work after the incident with Lonnie. She has developed high blood pressure and continues to receive psychiatric treatment for emotional distress and depression.

In March of 2003, Smith sued the Wilsons in state court to recover damages for the trauma that she suffered as a result of Lonnie's actions. The Wilsons in turn sought coverage under their State Farm homeowners' insurance policy that was in effect at the time of this incident. Subject to various exclusions, State Farm is obligated under the policy to provide a defense and to indemnify the Wilsons in the event that they are sued "for damages because of bodily injury or property damage to which this coverage applies." The policy defines "bodily injury" as "physical injury, sickness, or disease," but specifically excludes coverage for "emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person."

In March of 2004, State Farm brought the present declaratory judgment action against the Wilsons and Smith in the United States District Court for the Northern District of Ohio. State Farm sought a declaration that it had no duty to defend or indemnify the Wilsons in the underlying state-court action brought by Smith. After the parties agreed to have the coverage dispute decided by a magistrate judge, State Farm filed a motion for summary judgment. State Farm argued that it had no duty to defend or indemnify the Wilsons because (1) Smith's claim did not arise from an "occurrence," (2) the Wilsons' policy excludes coverage for claims arising from the insured's "willful and malicious acts," and (3) the harm that Smith suffered did not constitute a "bodily injury" as that term is defined in the policy. The district court granted State Farm's motion on the third

ground without discussing the other two, ruling that there was no coverage for the underlying incident because Smith had not suffered a "bodily injury." This timely appeal followed.

## II. ANALYSIS

### A. Standard of review

This court reviews a district court's grant of summary judgment de novo. *Minadeo v. ICI Paints*, 398 F.3d 751, 756 (6th Cir. 2005). Summary judgment is proper where there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the district court must construe all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

### B. Smith's "bodily injury" claim

Although the district court found that Lonnie's conduct was "reprehensible and offensive," it concluded that Smith had not suffered a "bodily injury" for which there was coverage under the Wilsons' State Farm policy. The court reached this conclusion after finding that "actual physical harm" was required in order for an injury to be cognizable under a policy that defines bodily injury as "physical injury, sickness, or disease." State Farm had no duty to defend or indemnify the Wilsons in Smith's underlying state-court action, the district court reasoned, because the Wilsons and Smith had "failed to set forth any support for their contention that unwanted and offensive

physical contact alone constitutes an actual physical injury," and because "Smith did not sustain any cuts, bruises, sprains, broken bones, or any other physical injuries."

The Wilsons and Smith concede that the State Farm policy requires a "physical injury" for coverage to exist. But they argue that the district court defined the term too narrowly when it concluded that the harm Smith suffered as a result of Lonnie's assault was not a "physical injury." They claim that Smith suffered "significant, external violence" when she "was forced to put her fingers within her vagina under threat of death by Lonnie" and when Lonnie spread her legs apart, rubbed himself against her, and attempted to kiss her. Such external violence, they contend, constitutes a "physical injury" under the policy.

The argument advanced by the Wilsons and Smith is premised on the assumption that the words "physical injury" as used in the State Farm policy are ambiguous. Smith, in particular, contends that the term "physical injury" is ambiguous because the term "injury" is not defined in the policy. She suggests that the court resolve this purported ambiguity by referring to the definition of injury found in Black's Law Dictionary; namely, "[t]he invasion of any legally protected interest of another." Black's Law Dictionary 785 (6th ed. 1990). Based on this definition, she argues that "the term *injury* does not require any physical sequelae."

Smith correctly observes that the term "physical injury" is not defined in the State Farm policy. But "[t]he mere absence of a definition in an insurance contract does not make the meaning of the term ambiguous." *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 652 N.E.2d 684, 686 (Ohio 1995) (finding that the word "employee," which was undefined by the insurance policy in question, had a plain and ordinary meaning and was therefore not ambiguous). In the absence of a

definition, we "must give undefined words used in an insurance contract their plain and ordinary meaning." *Id.*; *see also King v. Nationwide Ins. Co.*, 519 N.E.2d 1380, 1383 (Ohio 1988) (holding that insurance coverage should be determined "in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed") (citation and quotation marks omitted).

The word "injury" in the State Farm policy at issue is preceded initially by the word "bodily" and later by the word "physical." Even if, as a general matter, a harm need not be physical in order to be considered an "injury," the policy language in the present case explicitly restricts coverage to harms that are in fact "physical" in nature.

The case of *David v. Nationwide Mutual Insurance Co.*, 665 N.E.2d 1171 (Ohio Ct. App. 1995), is closely analogous to the present circumstances. In *David*, the court was called upon to determine the ordinary meaning of the term "bodily injury." The insurance carrier in *David* refused to defend or indemnify its insured in the underlying litigation, which involved a woman who had sued the insured for making "'repugnant' sexual remarks to [her], . . . "grabb[ing] her breast, and . . . expos[ing] his penis to her." *Id.* at 1172. She "suffered emotional distress and received counseling from a psychologist" as a result of the incident. *Id.* After observing that "[t]he Ohio Supreme Court has held that 'bodily injury' usually indicates an injury brought on by external violence," the Ohio appellate court ruled that there was no coverage under the policy for the emotional distress caused by the insured's actions. *Id.* at 1173 (citing *Tomlinson v. Skolnik*, 540 N.E.2d 716 (Ohio 1989)); *see also Reichard v. Nationwide Mut. Fire Ins. Co.*, No. 13392, 1992 WL 361829, at *3 (Ohio Ct. App. Dec. 10, 1992) (unpublished) (surveying the caselaw and concluding

that most "courts hold that the term 'bodily injury' denotes actual physical harm arising from corporeal contact").

Interpreting the term "bodily injury" to require something more than physical contact, as the court held in *David*, comports with the common understanding of this phrase as well. *See King*, 519 N.E.2d at 1383 (stating that the definition of an unambiguous term in an insurance contract may be "gathered from the ordinary and commonly understood meaning of the language employed") (citation and quotation marks omitted). State Farm argues that, if this court were to accept the definition of "physical injury" urged by the Wilsons and Smith, a person who is bumped into by someone in a crowd would have sustained a "bodily injury."

We agree with State Farm that the phrase "physical injury" cannot be read as synonymous with every instance of physical contact, as Smith argues. Nor can the phrase be read to encompass any injury, whether tangible or not, arising out physical contact, as the Wilsons argue. Indeed, as commonly understood, contact with another results in a "physical injury" only where a tangible harm to the body is ascertainable as a result of the contact. Despite Lonnie's highly offensive and humiliating conduct, the district court properly found that "Smith did not sustain any cuts, bruises, sprains, broken bones, or any other physical injuries."

The Wilsons' State Farm policy specifically excludes coverage for "emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury." In finding that Smith had suffered emotional harm, but that this harm had not arisen from "an actual physical injury," the district court was influenced by the following exchange in Smith's deposition:

Q:    What injuries are you claiming you sustained as a result of the incident?

A:    Just—I'm claiming that I'm just as stressed and physically, mentally exhausted, just—just—I'm not myself anymore.

Q:    What kind of physical ailment are you claiming to have?

A:    I'm not claiming to have any.  I have been diagnosed with depression.
My blood pressure has gone sky high since then.

There is no question in the present case that Smith was seriously harmed by Lonnie's egregious conduct, and that any person in a similar position would have felt terrified and humiliated. Smith has been unable to return to work since the assault, continues to require the treatment of a psychiatrist for her emotional distress, and has developed high blood pressure as a result of her experience.  But the fact that Smith's emotional trauma was the direct result of *physical contact*—both when Lonnie touched Smith and when he forced her to touch herself—does not mean that she sustained a *physical injury*.  *See Dickens v. Gen. Accident Ins.*, 695 N.E.2d 1168, 1169-70 (Ohio Ct. App. 1997) (finding that "physical symptoms stemming from . . . emotional distress," such as "nausea, stomach pains, headaches, anxiety, mental torment, body pain, and other adverse health effects," did not qualify for coverage "[b]ased on the commonly accepted definition[] of 'bodily injury'") (internal citation omitted).  We therefore conclude that the emotional harm suffered by Smith, though unquestionably serious, was not a "bodily injury" for which coverage is provided under the Wilsons' State Farm policy.

**C.      State Farm's "willful and malicious acts" defense**

Finally, we note that another argument advanced by State Farm—one not addressed by the district court—provides an independent ground for affirmance. State Farm argued before the district court that Lonnie's conduct fell within the category of "willful and malicious acts" by the insured—acts that the policy expressly excludes from coverage. Although our conclusion regarding the interpretation of the term "bodily injury" obviates the need for further elaboration on this argument, we read Ohio caselaw as fully supporting State Farm's contention. One case directly on point is *Reitz v. Mathews*, No. 94APE01-15, 1994 WL 504383 (Ohio Ct. App. Sept. 15, 1994) (unpublished), in which a young man was charged with kidnapping and raping a fifteen-year-old acquaintance. He pled guilty to the lesser charge of gross sexual imposition—one of the offenses with which Lonnie was charged in the present case—and the victim sued for damages. The victim eventually tried to collect from State Farm, the perpetrator's insurer, but the Ohio Court of Appeals held that the language exempting "willful and malicious acts" from coverage released State Farm from any liability resulting from the acts of gross sexual imposition to which the insured had pled guilty. *Id.* at *4; *cf. Young v. All Am. Ins. Co.*, 611 N.E.2d 421, 425 (Ohio Ct. App. 1992) (holding that a mother's actions that aided and abetted the sexual abuse of her daughter "constituted intentional conduct . . . to cause harm" that fell within the insurance policy's intentional-injury exclusion); *Gearing v. Nationwide Ins. Co.*, 665 N.E.2d 1115, 1120 (Ohio 1996) (holding that public policy bars insurance coverage for intentional acts of sexual molestation of children). The reasoning of these cases provides an additional basis for affirming the grant of summary judgment in favor of State Farm.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.