NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0117n.06

No. 13-3424

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Feb 10, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| AMANDA MCGINNIS FLYNN, | ) | |
| | ) | |
| Plaintiff – Appellant | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| v. | ) | DISTRICT OF OHIO |
| | ) | |
| STATE FARM MUTUAL AUTOMOBILE, | ) | OPINION |
| INSURANCE COMPANY | ) | |
| | ) | |
| Defendant – Appellee | ) | |

Before: David W. McKeague, Jane B. Stranch, Circuit Judges and Curtis L. Collier, District Judge.[*]

**McKeague, Circuit Judge.** Amanda McGinnis Flynn sued her boyfriend (and now husband) Scott Flynn and Defendant State Farm Mutual Automobile Insurance Company seeking to recover for Scott Flynn's alleged negligence arising out of a January 20, 2010 automobile accident when Amanda's car rear-ended a semi-tractor trailer. Amanda also asserted claims for declaratory judgment and bad faith against State Farm, alleging that Scott Flynn was entitled to coverage for the accident under policies issued by State Farm to Scott's mother and father. The parties filed cross-motions for summary judgment on the issue of whether the State Farm policies provide coverage for the accident to Scott Flynn. The district court issued an order granting State Farm's Motion for Summary Judgment and denying Amanda Flynn's Cross-

---

[*] The Honorable Curtis L. Collier from the U.S. District Court for the Eastern District of Tennessee, sitting by designation.

Motion for Summary Judgment, finding that Scott Flynn was not entitled to coverage for the accident. For the reasons stated below, we **AFFIRM**.

**I.**

On January 20, 2010, Amanda Flynn ("Amanda") was a passenger in her own automobile, which was being driven by her then-boyfriend (and now husband) Scott Flynn ("Scott") to an apartment in Lebanon, Ohio that she and Scott shared with his mother, Sallie Flynn ("Sallie"). They were traveling southbound on 1-75 in Dayton, Ohio when Scott glanced down at his cell phone and failed to see that the traffic ahead had stopped. Scott was unable to stop Amanda's car in time and the car collided with the rear of the semi-tractor trailer. Scott and Amanda were injured as a result of the accident.

Amanda filed suit against Scott and State Farm on July 8, 2011 in the Hamilton Court of Common Pleas, alleging claims against Scott in negligence and negligence per se, as a result of the accident. Amanda also asserted claims for declaratory judgment and bad faith against State Farm, claiming that Scott was entitled to coverage for the accident under the State Farm policies issued to Scott's mother, Sallie, and to Scott and his father, Stephen Flynn.

In November 2011, the parties reached a partial settlement with Amanda's insurer, Nationwide Insurance, and Amanda dismissed her claims against Scott with prejudice. With the dismissal of Scott, the parties were diverse and State Farm removed the case to the United States District Court for the Southern District of Ohio on December 19, 2011 pursuant to 28 U.S.C. § 1332. The parties then consented to jurisdiction by the magistrate judge assigned to the case. The parties agreed that there was no genuine dispute as to any material facts and filed cross motions for summary judgment. On March 12, 2013, the magistrate judge granted State Farm's Motion for Summary Judgment and denied Amanda's Motion for Summary Judgment. The magistrate

2

judge found that Amanda was not covered under either State Farm policy as her car was not a "non-owned car."

## II.

### A. Standard of Review

We review *de novo* a district court's grant of summary judgment. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999). Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] Fed. R. Civ. P. 56(a). When reviewing a grant of summary judgment, we must view the evidence and draw all reasonable inferences in favor of the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). For cross-motions for summary judgment, the court must review each motion on its own merits and view all facts and inferences in the light most favorable to the non-moving party. *Beck v. City of Cleveland*, 390 F.3d 912, 917 (6th Cir. 2004). This Court has recognized that the filing of cross-motions for summary judgment does not necessarily mean that the award of summary judgment is appropriate. *Id.*

---

[1] Amanda claims that one of the reasons summary judgment is not appropriate in this matter is because Ohio courts have held that the term "residency in the same household" constitutes an issue of fact, which must be determined by the jury. Amanda cites *Wood v. McQueen* for this proposition. No. 68472, 1995 Ohio App. LEXIS 4071, *17 (Ohio Ct. App. Sept. 21, 1995). In *Wood v. McQueen*, the appeals court stated that when a party's sworn statements are inconsistent with later deposition testimony, summary judgment is improper because there exists a question of credibility which can be resolved only by the trier of fact. *Id.* In *Wood*, there was a genuine issue of material fact regarding whether someone was a "resident" based on contradicting evidence. *Id.* Accordingly, the court denied summary judgment as to this issue. *Id.* at *18–19. However, the court in *Wood* never stated that determining whether an individual is "residing in the same household" is a question of fact for the jury. Rather, the court in *Wood* merely found the evidence to be contradicting, which precluded the court from entering summary judgment. Accordingly, this Court will follow existing Ohio law holding that the term "residing in the same household" is a legal question, for the court, if the term has a clear and unambiguous meaning. *See Inland Refuse Transfer Co. v. Browning-Ferris Indus. of Ohio, Inc.*, 15 Ohio St.3d 321, 322 (1984).

**B. State Farm Policies at Issue**

As the only issue for this Court to review is the interpretation of the two insurance policies at issue, we will begin by addressing the specific language of the State Farm policies[2] at issue.

The State Farm insurance policy at issue is an automobile policy issued to Sallie Flynn (the "policy"). The policy provides $100,000 per person of bodily injury or property damage liability. The "Liability Coverage" section of the policy provides that State Farm will:

> 1. pay damages which an ***insured*** becomes legally liable to pay because of:
>    a. ***bodily injury*** to others, and
>    b. damage to or destruction of property including loss of its use,
>    caused by accident resulting from the ownership, maintenance or use of ***your car*** . . . .

R. 13-1, Sallie Flynn Policy at 12, PageID # 112. The policy provides that the "liability coverage extends to the use, by an ***insured***, of a ***newly acquired*** car, a ***temporary substitute car*** or a ***non-owned car***." *Id.* The policy defines a "non-owned car" as follows:

> ***Non-Owned Car***—means a ***car*** not owned by, registered to or leased to:
> . . .
> any other ***person*** residing in the same household as ***you, your spouse*** or any ***relative***; . . . .

*Id.* at 8, PageID # 108.

---

[2] There are two policies at issue in this case: Sallie Flynn's policy and Scott and Steven Flynn's policy. However, the language at issue in the policies is identical and the issue is identical: Whether Amanda's vehicle qualifies as a "non-owned car" under the policy. Accordingly, we will only describe the details of Sallie Flynn's policy, as Amanda can collect under either policy only if her car is a "non-owned car." As we hold that Amanda's car does not qualify as a "non-owned car," we find no reason to go into further interpretive questions involved with the State Farm Policy issued to Scott and Steven Flynn. *See* R. 22, Dist. Court. Op. at 11–14, PageID # 1478–81.

When a "non-owned car" is referenced in the policy, the policy specifically defines an "insured" to mean:

1. the first **person** named in the declarations;
2. his or her **spouse**;
3. their **relatives**;[3] and
4. any **person** or organization which does not own or hire the car but is liable for its use by one of the above **persons**.

*Id.* at 12, PageID # 112.

In order for this Court to determine whether Amanda's car qualifies as a "non-owned" car, we must interpret whether Amanda was a "person *residing in the same household*" as Scott and Sallie Flynn. R. 13-1, Sallie Flynn Policy at 8, PageID # 108. If Amanda was "residing in the same household" as Scott and Sallie, then Amanda's car will not be considered a "non-owned car" under either policy and State Farm will not be liable to indemnify Scott for damages owed to Amanda.

## C. Interpretation of the State Farm Policy

### 1. Contract Interpretation Principles in Ohio

Under Ohio law, an insurance policy must be interpreted in accordance with the rules of construction applicable to other contracts.[4] *Hybud Equip. Corp. v. Sphere Drake Ins. Co.*, 596 N.E.2d 1096, 1102 (Ohio 1992). The Supreme Court of Ohio has stated that "when words used in a policy of insurance have a plain and ordinary meaning, it is neither necessary nor

---

[3] The policy defines "relative" as follows:

> **Relative**—means a **person** related to **you** or **your spouse** by blood, marriage or adoption who resides primarily with **you**. It includes **your** unmarried and unemancipated child away at school.

R. 13-1, Sallie Flynn Policy at 9, PageID # 109.

[4] As this matter was before the district court pursuant to diversity jurisdiction, this Court is bound to apply the substantive law of the State of Ohio. *See Klaxon Co. v. Stentor Elec. Mfg., Co.*, 313 U.S. 487, 496 (1941).

5

permissible to resort to construction unless the plain meaning would lead to an absurd result." *Travelers Indemnity Co. v. Reddick*, 308 N.E.2d 454, 456 (Ohio 1974). When the terms of an insurance policy are clear and unambiguous, the interpretation becomes a matter of law. *See Inland Refuse Transfer Co. v. Browning-Ferris Indus. of Ohio, Inc.*, 1474 N.E.2d 271, 272 (Ohio 1984). However, when an insurance policy is ambiguous, a contract of insurance should be construed liberally in favor of coverage and strictly against the insurer when the meaning of the language is uncertain. *Entenman v. Auto-Owners Ins. Co.*, 737 N.E.2d 119, 123–24 (Ohio Ct. App. 2000) (noting the "well settled legal principle establishing that ambiguous words in an insurance contract must be construed in favor of the claimant seeking coverage").

1. <u>Definition of "Residing in the Same Household"</u>

Both parties agree that the term "residing in the same household" is not defined in State Farm's policies, but they dispute the proper interpretation of that term. State Farm contends that Amanda's car does not qualify as a "non-owned car" because Amanda was "residing in the same household" with Sallie and Scott at the time of and preceding the accident. In support, State Farm cites testimony from Amanda and Scott describing their living situation, specifically showing that Amanda was living in an apartment in Lebanon, Ohio with Sallie and Scott from August 2009 to January 2010. State Farm argues that Amanda's living arrangement with Sallie demonstrates that she was a "resident" of the household and not a temporary or transient visitor.

Amanda counters State Farm's interpretation by asserting that "household" is an undefined term in State Farm's policy and therefore is ambiguous. Amanda argues that the district court erred in not relying on "intent" as the primary factor in determining whether someone is "residing in a household." Amanda claims that she was only temporarily living in

6

Sallie's home and she never intended to stay in Sallie's apartment beyond a brief period of time. Accordingly, she asserts that the district court should be reversed.

In claiming that the term "household" is ambiguous and capable of multiple meanings, Pet.'s Br. at 13–19, Amanda overlooks the well-developed Ohio caselaw on this issue. The Supreme Court of Ohio has held that, in determining whether an individual is "residing in the same household," the term "household" is defined as "[t]hose who dwell under the same roof and compose a family: a social unit comprised of those living together in the same dwelling place." *Shear v. West American Ins. Co.*, 464 N.E.2d 545, 548 (Ohio 1984) (citing Webster's Third New International Dictionary). Accordingly, the term "residing in the same household" has been defined as "one who lives in the home of the named insured for a period of some duration or regularity, although not necessarily there permanently, but excludes a temporary or transient visitor." *Farmers Insurance of Columbus, Inc. v. Taylor*, 528 N.E.2d 968, 969 (Ohio Ct. App. 1987). All twelve of Ohio's appellate districts have adopted this definition of "residing in the same household."[5] The fact that the individuals may be fully-emancipated is irrelevant in the

---

[5] *Clifton v. Martin*, No. C-950376, 1996 Ohio App. LEXIS 256, at *4–5 (Ohio Ct. App. 1st Dist. Jan. 31, 1996); *McDaniel v. Daly*, No. 22453, 2008 Ohio App. LEXIS 1757, ¶ 68 (Ohio Ct. App. 2nd Dist. May 2, 2008); *Carpenter v. United Ohio Ins. Co.*, No. 3-96-16, 1997 Ohio App. LEXIS 2012, at *12 (Ohio Ct. App. 3rd Dist. May 9, 1997); *Comisford v. Erie Insurance Property Cas. Co.*, No. 10CA3, 2011 Ohio App LEXIS 1208, ¶ 37 (Ohio Ct. App. 4th Dist. Feb. 11, 2011); *Keith v. State Farm Ins. Co.*, No. 06 CA 9, 2007 Ohio App. LEXIS 1695, ¶ 37 (Ohio Ct. App. 5th Dist. Apr. 20, 2007); *Entenman v. Auto-Owners Ins. Co.*, 136 Ohio App.3d 541, 547 (Ohio Ct. App. 6th Dist. 2000); *Hill v. Cundiff*, No. 05 CA 824, 2006 Ohio App. LEXIS 5259, ¶ 27 (Ohio Ct. App. 7th Dist. Sept. 28, 2006); *Motorists Mut. Ins. Co. v. Henderson*, No. 85557, 2005 Ohio App. LEXIS 4663, ¶ 27 (Ohio Ct. App. 8th Dist. Sept. 29, 2005); *Grange Mutual Cas. Co. v. Norton*, No. 10CA0105-M, 2011 Ohio App. LEXIS 5074, ¶ 8 (Ohio Ct. App. 9th Dist. Dec. 5, 2011); *Grange Insurance Company v. Stubbs*, No. 11AP-163, 2011 Ohio App. LEXIS 4598, ¶ 17 (Ohio Ct. App. 10th Dist. Nov. 1, 2011); *Allstate Indemn. Co. v. Collister*, No. 2006-T-0112, 2007 Ohio App. LEXIS 4601, ¶ 19 (Ohio Ct. App. 11th Dist. Sept. 28, 2007); *Parker v. Patrick*, No. CA2011-12-027, 2012 Ohio App. LEXIS 2915, ¶ 38 (Ohio Ct. App. 12th Dist. July 23, 2012).

analysis of whether someone resides in a household, absent evidence demonstrating an "arm's-length living arrangement." *Shear*, 464 N.E.2d at 549.

While Amanda argues that the term "residing in the same household" is open to multiple interpretations,[6] this Court is unpersuaded. This Court has recognized that "the mere absence of a definition in an insurance contract does not make the meaning of the term ambiguous." *State Farm Fire & Cas. Co. v. Wilson*, 153 F. App'x 952, 956 (6th Cir. 2005) (unpublished) (citing *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 652 N.E.2d 684, 686 (Ohio 1995)). The fact that the State Farm policies do not expressly define the term does not make the term ambiguous, as Ohio courts have expressly adopted a definition of "residing in the same household." Several Ohio courts have even stated that the definitions of "household" and "residing in the same household" are well established. *See, e.g.*, *Grange Ins. Co. v. Stubbs*, No. 11AP-163, 2011 Ohio App. LEXIS 4598, at ¶ 17–18 (Ohio Ct. App. Nov. 1, 2011); *Rock v. Mich. Mut. Ins., Co.*, No. 80742, 2002 Ohio App. LEXIS 5123, ¶ 18 (Ohio Ct. App. Sept. 26, 2002).

2. <u>Significance of Familial Relationship to "Residing in the Same Household"</u>

Amanda largely relies on the case of *Napier v. Banks*, which held that the purpose of a "non-owned car" provision was to "protect the insurer from a situation where an insured would pay for but one policy and be covered while regularly driving other automobiles owned by

---

[6] Amanda relies on caselaw from West Virginia, Virginia, and New York to support her argument that the term "residing in the same household" is ambiguous. *See Drake v. Snider*, 608 S.E.2d 191, 197 (W.Va. 2004) and *Rohlin v. Nationwide Mut. Ins. Co.*, 809 N.Y.S.2d 374, 375 (N.Y. App. Div. 2006) and *State Farm Mut. Auto Ins. Co. v. Smith*, 142 S.E.2d 562, 566–67 (Va. 1965). This Court will not address these cases, as they are inapplicable to instant suit. The definition of "household" is settled in Ohio, and therefore the decisions in these other jurisdictions are not only inapplicable, but they are contrary to substantive Ohio law. *See Pennington v. State Farm Mut. Auto Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009) (noting that the substantive law of the forum state must be applied in diversity cases) (citing *Erie R.R. v. Tompkins*, 304 U.S. 65, 78 (1938)).

members of his family." 250 N.E.2d 417, 419 (Ohio Ct. App. 1969).[7] In *Napier*, the court held that the term "household" was synonymous with "family." *Id.* Accordingly, Amanda argues that as the definition of "household" is tied to family, she cannot be considered a resident of Sallie's home. *See also* Pet. Rep. Br. at 3–4. Amanda also relies on *Napier* for the proposition that the primary factor to consider in determining whether a person is a "resident" is his or her intent to stay at a certain location. 250 N.E.2d at 418; *see also American States Ins. Co. v. Guillermin*, 671 N.E.2d 317, 321–22 (Ohio App. 1995).

This Court is unpersuaded. While the Twelfth Appellate District in *Napier* stated that "the 'same household' necessarily involves but one household, and, ordinarily, the word 'household' is synonymous with 'family,'" this case must be taken in the context of Ohio's current jurisprudence. 250 N.E.2d at 419. As decided in *Shear*, the term "household" is now given the "common, ordinary, usual meaning" of "those who dwell under the same roof and compose a family: a social unit comprised of those living together in the same dwelling place." 464 N.E.2d at 548. Admittedly, the definition of "household" set forth in *Shear* includes the word "family," but the definition does not end there. The definition of "household" is compound: a "household" can compose a "family" and can also compose a "social unit" consisting of people "living together in the same dwelling place." *Shear*, 464 N.E.2d at 548.[8] Accordingly, we cannot agree with Amanda's contention that the term "household" mandates a familial relationship.

---

[7] While the court in *Napier* mentioned the policy-reason behind "non-owned car" provisions in insurance policies, the parties do not raise any arguments regarding the policy implications of the interpretation of the phrase "residing in the same household" on appeal and therefore this Court will not address this question.

[8] A brief overview of the contract at issue in *Shear* is also instructive. In *Shear*, the insurance contract at issue provided that coverage was extended to "relatives living in your household." *Shear*, 464 N.E.2d at 548. However, the term "household" was not defined in the policy. *Id.* As the policy at issue in *Shear* provided coverage for "*relatives* living in your household," it is not surprising that the definition of "household" the court chose to use included the term "family." However, the State Farm policy at issue in this case defines a non-owned car as a car not owned

9

### 3. Individual's Subjective Intent to Reside

Furthermore, Amanda's claim that an individual's subjective intent is the determinative factor in deciding whether a person is a member of a "household" is without basis in law. Ohio courts have certainly emphasized that a factor to consider when determining whether a person is a member of a "household" is whether the living arrangement is "temporary" or "non-temporary." *See Shear*, 464 N.E.2d at 549 (considering whether individuals were a "household" and stating that there was no evidence of the arrangement being "temporary in nature"); *Guillermin*, 671 N.E.2d at 321 (citing *Shear* for the proposition that the non-temporary nature of the domestic living arrangements is a factor in determining if relatives are members of the same household); *Napier*, 250 N.E.2d at 419 (determining that the "relatively brief period of occupancy preceding the accident and the temporary nature of the arrangement, when coupled with all other circumstances," warranted against finding that the parties were a "household"). While some Ohio appellate courts have considered a party's intent in staying in a residence to determine whether someone is a member of a household, none of the cases Amanda cites state that the party's intent is the determinative factor in establishing residency. Rather, courts can consider the temporary or non-temporary nature of the living arrangement to determine whether a person is a member of a "household," along with the other factors the Supreme Court of Ohio has outlined. There is no case law to suggest that the temporary nature of a person's stay in a household negates other factors indicative of the fact that a person is "residing in the same household." Accordingly, this Court finds that the phrase "residing in the same household" is unambiguous and that Ohio courts have adopted a clear definition of the term.

---

by a "person . . . residing in the same household" as the policyholder. Accordingly, the fact that the State Farm policy at issue here does not explicitly provide coverage to "relatives living in your household" is an important factual distinction to explain the inclusion of the term "family" in the *Shear* definition of "household."

**D. Application of "Residing in the Same Household" to the Instant Case**

The district court determined that the undisputed facts showed that Amanda was residing in Sallie's household at the time of the January 2010 accident. The district court noted that Amanda "stayed at the household every night for five months from August 2009 to January 2010; received her mail there; and had no other dwelling." R. 22, District Court Order at 9, PageID # 1476. The district court observed that Amanda frequently ate meals with the Flynns, which lent further support to the conclusion that she was residing in the Flynn household. *Id.* The district court considered the fact that Amanda claimed that she was planning on moving out of the Flynn household; however, the court held that "intent" was only one of several factors for the court to consider. *Id.* at 10, PageID # 1477. The district court determined that the fact that Amanda planned to move did not negate her status as a "resident" of Sallie's household. *Id.* Accordingly, the district court concluded that State Farm was entitled to summary judgment on Amanda's claims for declaratory relief.

Viewing the undisputed facts in a light most favorable to Amanda, the record is clear that Amanda was "residing in the same household" as Sallie and Scott. Amanda had been living with Sallie and Scott for approximately five months, from August 2009 through January 2010.[9]

---

[9] The case of *Thompson v. Preferred Risk Mut. Ins. Co.*, 513 N.E.2d 733 (Ohio 1987) is instructive. In this case, the Supreme Court of Ohio upheld the trial court's conclusion that two brothers who lived together for only five months were residents of the same household and not separate, distinguishable households. *Id.* at 734–35. As the court of appeals stated:

> The brothers lived in the same single-family house, each had his own set of keys, and Richard had full use of his brother's house, where he slept every night and shared meals with his brother and [a girlfriend of the brother's]. There is no evidence in the record of an arms length arrangement, for although Richard helped with utility expenses and brought his own food, he did not pay a fixed amount of rent; nor did his brother expect him to do so. Richard testified he "helped out" with rent when necessary.

Amanda did not pay rent or utilities at the apartment. Amanda had her own keys to the Flynn residence and stayed there every night in a separate bedroom. Amanda also completed a "change of address" form with the U.S. Postal Service to have all of her mail forwarded to Sallie's apartment. Amanda put all of her furniture and belongings, with the exception of her clothes, in a storage facility in Lebanon, Ohio. Ultimately, Amanda had no place to live other than Sallie's apartment. While Amanda may have expressed an intention to move out of Sallie's apartment in the near future, she had not taken any action to sign a lease or make plans to move out of Sallie's apartment.[10] There was no "arm's-length" relationship between the parties. *Shear*, 464 N.E.2d at 549. Accordingly, Amanda was "residing in the same household" as Sallie, and Amanda's car does not qualify as a "non-owned car" under the State Farm policies.

### III.

Based on the facts in the record, we **AFFIRM** the district court's grant of summary judgment in favor of State Farm. Based on the definition of "residing in the same household" adopted by the Supreme Court of Ohio and all Ohio appellate districts, the district court correctly held that Scott was not entitled to coverage for the accident under the State Farm policies at issue.

---

*Thompson v. Preferred Risk. Mut. Ins. Co.*, No. CA85-09-073, 1986 Ohio App. LEXIS 6712 *8 (Ohio Ct. App. May 12, 1986).

[10] Amanda stated that her "intent" was to move out of the Flynns' apartment, and that she even searched for her own apartment prior to the accident. R. 15-1, Amanda Depo. at 57–58, PageID # 312–13. Amanda stated in a deposition that she planned to sign a lease for an apartment on Friday, January 22, 2010. *Id.* However, the accident averted these plans. Regardless of what Amanda's stated intention was, it does not mean that she was not residing in Sallie's household leading up to the time of the accident. As described in section II.C, while some Ohio appellate courts have considered a party's intention to move out of a location in determining whether they are a "resident," this one factor is not determinative. The Supreme Court of Ohio has not considered a party's "intention" in determining whether a person is "residing in the same household."

**Jane B. Stranch, dissenting.** The undisputed facts show that Amanda Flynn, then Amanda McGinnis, was injured in 2009 when a brick was thrown through her car window, and she became afraid to drive herself or live alone. As a result, she accepted the hospitality of her boyfriend's mother while she recovered and looked for her own apartment. Amanda did not pay rent, and she moved most of her personal belongings to a month-to-month storage facility. Amanda stayed with her boyfriend's mother for five months, until the day that her boyfriend crashed her car. At the time of the accident, Amanda was scheduled to sign the lease on her own apartment in two days, and she had removed some of her things from storage in preparation.

Scott Flynn, then Amanda's boyfriend, and his mother had insurance policies that covered Scott as a driver of a "non-owned car" but excepted from that coverage cars owned by a "person" who "resid[es] in the same household" as the insured person or his relatives. Ohio courts have explained that the purpose of similar exclusions is "to protect the insurer from a situation where an insured would pay for but one policy and be covered while regularly driving" other cars owned by members of the same household. *E.g.*, *Napier v. Banks*, 250 N.E. 2d 417, 419 (Ohio Ct. App. 1969).

The question here is not whether Amanda "resided" in Sallie Flynn's apartment, as the majority suggests. The question is whether Amanda was a member of Sallie's or Scott's "household" during the time she accepted their hospitality. Under Ohio law, she was not.

Ohio has defined "household" to mean "those who dwell under the same roof *and* compose a family: a social unit comprised of those living together in the same dwelling place." *Shear v. W. Am. Ins. Co.*, 464 N.E. 2d 545, 548 (Ohio 1984) (emphasis added). This language plainly means that a "household" is not merely synonymous with "dwelling," but requires something more. How much more is less clear. It could mean that a household may only consist

13

of relatives living under one roof, as Amanda contends, but the term "social unit" in the explanatory second clause could suggest that the "family" could include non-relatives. Either way, a "unit" is required. The majority divides the definition to hold that a household can be composed of a family *or* a social unit, the latter requiring only a group of people who live together. Not only does this reading ignore the colon that makes the second clause explanatory of the first, but it also contradicts the analysis Ohio courts have laid out for resolving the "household" question.

Take *Shear*, for example. There, the question was whether a father was covered by the insurance policy of his adult son who lived in the same dwelling. Under the insurance policy, the father would be covered if he was "living in [the son's] household."[1] 464 N.E.2d at 548. Obviously, the two were relatives. After reciting the definition of household discussed above, the court considered the following facts: the two lived in the same house, the son was fully emancipated and paid his own bills, and the son had lived with his father since birth. *Id*. at 548-49. The court held that this did not establish separate households because (1) there was no evidence of an arm's length arrangement, and (2) there was no evidence that the arrangement was temporary in nature. *Id*. at 549. "Rather, there is ample evidence to support the finding that the Shears are part of a family unit and are members of the same household and have been so for many years." *Id*. If the majority were correct that the "social unit" at issue need only be a group of people living together in one dwelling, all of the *Shear* court's analysis after the first step of establishing that the two lived in the same house would have been unnecessary. But the analysis of what constitutes a "household" was necessary there and is applicable here.

---

[1] As the majority explains, the policy in *Shear* covered "[r]elatives living in [the insured's] household." 464 N.E.2d at 548. That provision contained two defining terms: "relative" and "household." Here, the policy excludes cars owned by a "person residing in the same household," so we need only examine the meaning of the term "household."

As another example, take *Napier*, a case cited by the majority. 250 N.E.2d 417. There, an adult daughter had moved in with her father for approximately four to six months after her divorce. The insurance policy was similar to the one at issue here: the policy would cover the daughter as a driver of the father's car unless the father was a "relative … who is a resident of the same household."[2] *Id*. at 418. The court said that there was no reason to dwell on the meaning of the term "resident" because the two plainly resided in the same physical structure. *Id*. at 419. "[T]he word 'household' cannot reasonably be equated with the word 'house.' … [O]rdinarily, the word 'household' is synonymous with 'family.'" *Id*. The court then said that the relatively brief four to six month period of occupancy, the temporary nature of the arrangement, and the fact that the daughter's things were in storage showed that the daughter was not a member of her father's household. *Id*. at 419. "In fact, other than the relationship of the parties, the record fails to reflect any of the usual characteristics associated with the same household or a single family." *Id.*

Other than the fact that Amanda was a non-relative, a fact that does not support the majority's argument, I do not see any meaningful difference between Amanda's circumstances and the ones in *Napier*. Amanda stayed with her host for five months on a temporary basis while her things were in storage and she looked for her own apartment. Other Ohio cases confirm that a temporary arrangement does not create a shared household. In *Thompson v. Preferred Risk Mutual Insurance Co.*, the Ohio Supreme Court—after noting that where a person receives mail was "hardly dispositive of the issue"—held that two brothers resided in the same household because the home was the "permanent residence" of both. 513 N.E.2d 733, 735 (Ohio 1987).

---

[2] There is no indication that the term "relative" affected the court's analysis of the term "household" as the majority suggests in the context of *Shear*; rather, the term "household" presented a separate definitional issue. 250 N.E.2d at 419.

15

Rather than acknowledging the distinction in Ohio law between the terms "reside" and "household," the majority appears to hold that Amanda was generally "residing in the same household" as Sallie and Scott because she lived in the same apartment for five months, filled out a change of address form, and ate meals with her host. This is said to show lack of an arm's length relationship under *Shear*, and, therefore, that Amanda was a member of her host's household. The majority's reliance on the arm's length relationship analysis misses two important points from *Shear*: first, the question of an arm's length relationship was relevant precisely because the person in question there was the son of the home owner, and second, the temporary nature of a residency can *also* undermine the existence of a shared household. 464 N.E. at 549.

The majority decision also ignores the purpose of these types of policy exclusions, which is to protect insurers from those who would pay for but one policy when they should pay for two. *See Napier*, 250 N.E.2d at 419. To hold that the policy excludes coverage for a car that is driven by the insured but owned by a convalescent temporarily staying in the driver's home exceeds the purpose of the exclusion and goes beyond the reasonable expectation of the parties. For the insured, it creates unanticipated gaps in coverage. It also transgresses traditional expectations of hospitality by potentially exposing those who temporarily open their homes (for example, someone who allows a friend to stay at his home to receive nearby medical treatment) to unexpected liability.

In sum, Ohio law supports the conclusion that Amanda was not a member of Sallie's or Scott's household at the time of the accident. Because I think that the majority's holding is contrary to Ohio law, I respectfully dissent.

16